RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHARLES S. SORRELL,

          *Plaintiff-Appellant/*
          *Cross-Appellee,*

     *v.*

RINKER MATERIALS CORPORATION,

          *Defendant-Appellee/*
          *Cross-Appellant.*

Nos. 03-4359/4443

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 02-00207—Thomas M. Rose, District Judge.

Argued: December 7, 2004

Decided and Filed: January 14, 2005

Before: MARTIN and MOORE, Circuit Judges; BUNNING, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jill A. May, COOLIDGE, WALL, WOMSLEY & LOMBARD, Dayton, Ohio, for Appellant. Joseph P. Shelton, FISHER & PHILLIPS, Atlanta, Georgia, for Appellee. **ON BRIEF:** James E. Swaim, FLANAGAN, LIEBERMAN, HOFFMAN & SWAIM, Dayton, Ohio, for Appellant. Joseph P. Shelton, Robert P. Foster, FISHER & PHILLIPS, Atlanta, Georgia, Paul G. Hallinan, Robin D. Ryan, PORTER, WRIGHT, MORRIS & ARTHUR, Dayton, Ohio, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. In this case brought pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., plaintiff Charles S. Sorrell appeals, and defendant Rinker Materials Corporation cross-appeals, the district court's award of summary judgment in favor of Rinker. For the reasons that follow, we VACATE the district court's judgment and REMAND for further proceedings.

_____

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I.

Charles Sorrell began working for a predecessor of Rinker Materials Corporation in 1977 and, for the last thirteen years or so, held an outside sales position in the company. This position required Sorrell to sell precast concrete items to customers in the commercial construction industry, and it necessitated frequent travel. Sorrell was responsible for a sales territory that covered the City of Cincinnati and its surrounding areas, including north of Cincinnati to Route 73, east into Clermont County, west to the Indiana border, and south to the northern-most areas of Kentucky. At its furthest reaches, this territory required approximately one hour of driving time from the Sorrells' home in Dayton, Ohio. In addition to visiting customers within his sales territory, Sorrell generally worked at Rinker's Dayton facility three days per week.

In mid-November of 2000, Sorrell informed Randy Yoakum, a supervisor at Rinker's Dayton facility, that he had decided to retire. Yoakum indicated that he would accept Sorrell's decision and the two men discussed various possibilities whereby Sorrell might return to work in some capacity for Rinker after the winter. Yoakum made clear, however, that upon his retirement Sorrell would be permanently replaced by a new person. Sorrell and Rinker agreed that Sorrell's last day of work would be around December 21, but that his termination would not become effective until January 16, 2001. From December 21 to January 16, Sorrell would remain on Rinker's payroll and use his accrued vacation time. Within a few days after announcing his retirement, Sorrell was informed that his replacement would be another Rinker employee named Steve Jeffries, who had previously worked at the company's Indianapolis facility but wished to move to the Dayton area. During the month of December, Sorrell assisted in training Jeffries to be his replacement. On December 18, Rinker officials filled out a personnel form indicating that Sorrell would be retiring. On December 20, Yoakum signed the form, indicating his approval of the personnel change.

Sorrell claims that his retirement decision was prompted, at least in part, by his desire to care for his wife, Sharrie Sorrell, who had recently developed an eye disorder. Mrs. Sorrell's physician, Dr. Opremcak, prescribed Prednisone as treatment for this disorder. Although Dr. Opremcak advised Mrs. Sorrell to take Prednisone daily, she could adjust the dosage to her needs. Because of Prednisone's potentially harmful side effects, Dr. Opremcak advised Mrs. Sorrell to keep the dosage as low as possible. In Mrs. Sorrell's experience, warmer weather helped her to minimize the dosage. Therefore, she decided that she wished to spend the winter of 2000-01 in Florida, where the Sorrells owned a condominium. No doctor advised Mrs. Sorrell that warmer weather could help to treat her eye condition or to minimize her Prednisone dosage.

At the time Sorrell announced his retirement decision, he erroneously believed that the Family and Medical Leave Act provided leave only for new parents. After learning that he may be entitled to leave pursuant to the Act to care for his wife, Sorrell decided that he would prefer to take such leave instead of retiring. At some point between announcing his retirement and December 21, Sorrell orally notified Rinker that he wished to take leave under the Act rather than retire. Sorrell was advised of the procedures for securing such leave. The first step in the process, he was told, was to submit a note from his wife's doctor. Dr. Opremcak provided a note, dated December 21, 2000, which stated that: "Due to decreasing Prednisone the body increases in stress, and decreases the immune system. Therefore a 3 month leave would help with the above." The parties characterize this note as a "medical certification," which is a term of art used in the Act. Although, as Sorrell acknowledges, Dr. Opremcak's note is mistakenly written as if Mrs. Sorrell herself were applying for leave, Rinker apparently voiced no specific concerns about the note.

Rinker next told Sorrell that he would have to complete certain forms. Yoakum informed him that because it was so close to the holidays, he could submit the leave forms after the first of the year. The Sorrells left for Florida just after Christmas. In January, after some delays, the necessary forms were sent to Sorrell in Florida. Sorrell submitted the completed forms to Rinker on January

22, 2001.  Sorrell's leave was officially approved soon afterward.  On or about February 19, Rinker executed a personnel change notification form, which indicated that Sorrell would not be retiring and which reinstated him to active employee status, retroactive to his original hire date, so that he would be entitled to take leave pursuant to the Act.

Sorrell's leave was to expire on April 12, 2001.  He and his wife returned to Ohio during the first week of April.  On or about April 7, before the leave expired, Sorrell called Yoakum and informed him that he was back in town and ready to return to work.  Yoakum told Sorrell that he had been informed by Thomas Hartley, another Rinker official, that Rinker was in a "hiring freeze" and that there were no positions available.  Sorrell told Yoakum that a hiring freeze should not affect someone returning from leave taken pursuant to the Family and Medical Leave Act.  Yoakum told Sorrell that he would talk to Hartley again and call Sorrell back.  Two weeks later, Yoakum called to tell Sorrell that Hartley had "something" for him.  Yoakum explained that Rinker was willing to reinstate Sorrell to an outside sales position, but that he would have to accept a territory covering the southeast quadrant of Indiana, which was "at least sixty miles from Sorrell's home" and "included areas of Indiana over 180 miles away from Sorrell's home that would take over three hours of driving time to reach."  Sorrell was told that he would be expected to spend two to three nights per week on the road, which he never had to do while working in his prior territory.

Sorrell met with Rinker officials about this proposed arrangement, but explicitly indicated that this was not the territory that he desired.  Hartley explained that his previous position, covering the Cincinnati territory, was not available because it was occupied by Jeffries.  Sorrell suggested the possibility of working out a part-time arrangement, but Hartley said that such an arrangement probably would not work because Rinker's customers expected salesmen to be available five days per week.  Sorrell explained that, in that case, he wanted his old territory back.  Hartley immediately rejected this proposition, but said that he would call Sorrell in a couple of days.  No one from Rinker contacted him, however, and Sorrell subsequently initiated this lawsuit alleging a violation of his rights under the Family and Medical Leave Act.  In particular, Sorrell claims that Rinker violated his rights by failing to restore him to his prior position, or an equivalent one, upon his return from leave.

The district court granted Rinker's motion for summary judgment on the ground that Sorrell had relinquished his outside sales position prior to requesting Family and Medical Leave Act leave and, therefore, was not entitled to that position, or an equivalent one, upon his return from leave. This timely appeal followed.

## II.

We review de novo the district court's award of summary judgment in favor of Rinker and against Sorrell.  *See Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On appeal, we consider all facts and inferences drawn therefrom in the light most favorable to Sorrell, as the nonmoving party.  *Peltier*, 388 F.3d at 987.

Sorrell's Family and Medical Leave Act claim is based upon what has been described as an "interference" theory.  Such a theory, we have explained,

> arises from § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," and from § 2614(a)(1), which provides that "any eligible employee who takes leave . . . shall be entitled, on return from such leave

> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position."

*Arban v. West Publ'g Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003).  In order to prevail on his claim, Sorrell must prove by a preponderance of the evidence that: (1) he was an eligible employee as defined in the Act; (2) Rinker was an employer as defined in the Act; (3) he was entitled to leave for one of the reasons set forth in the Act; (4) he gave notice of his intention to take leave as required by the Act; and (5) Rinker improperly denied him benefits under the Act.  *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

The sole issue raised in Sorrell's appeal challenges the district court's holding that Sorrell was not entitled to his prior position or an equivalent one upon his return from leave because he had already relinquished his outside sales position prior to requesting leave.  In its cross-appeal, Rinker argues, among other things, that Sorrell was not entitled to leave because his wife did not have a "serious health condition" as required by the Act and because Sorrell did not "care for" his wife within the meaning of the Act.  Sorrell responds that principles of waiver or estoppel preclude Rinker from challenging his entitlement to leave.  According to Sorrell, because Rinker granted his request for leave without informing him that Dr. Opremcak's medical certification was incomplete, without seeking to clarify the certification and without seeking a second opinion, "it cannot now challenge the sufficiency of the grounds for [his] request for leave."  Although Sorrell raised this argument in his memorandum in opposition to Rinker's motion for summary judgment, the district court never explicitly considered or resolved it; instead, the court held as a matter of law that Sorrell was entitled to leave in order to care for his wife, who had a serious health condition.

We decline at this point to consider the propriety of the district court's specific holdings, as we believe it is first necessary to resolve the issue that the district court ignored—namely, the effect of Rinker's unconditional approval of Sorrell's request for leave on its subsequent ability to contest his entitlement to leave.  The district court should resolve this issue in the first instance, and the case will be remanded for that particular purpose.  On remand, the district court should consider, in addition to any other matters that it deems appropriate, the following issues:

First, the district court should consider whether the doctrine of equitable estoppel applies to bar Rinker from challenging Sorrell's entitlement to leave under the Act.  Although we are unaware of any cases issued by this Court that are dispositive of this issue, several of our sister circuits have held that, under the right circumstances, an employer may be equitably estopped from challenging an employee's entitlement to such leave.  *See, e.g., Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002) (holding that an employer was equitably estopped from asserting an affirmative defense that an employee's leave was confined to the twelve weeks provided by the Act where the employer explicitly guaranteed longer leave); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 722-27 (2d Cir. 2001) (holding that the district court could conclude on remand that an employer is equitably estopped from challenging an employee's eligibility for leave where the employer allegedly failed to "inform its employees of the protections of the [Act] and what was required of its employees in order that they qualify for those protections"); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) (holding that "an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave").  Whether the doctrine of equitable estoppel applies in this case to preclude Rinker from challenging Sorrell's entitlement to leave is a matter for the district court to consider in the first instance on remand.

Second, the district court should consider whether, and to what extent, Rinker is precluded from contesting Sorrell's eligibility for leave by virtue of its alleged failure to comply with or to

avail itself of certain procedures under the Act.  On appeal, Sorrell identifies at least three such procedures.  First, Sorrell argues that Rinker failed to advise him that it found Dr. Opremcak's medical certification incomplete or to provide him a reasonable opportunity to cure any deficiency in the certification, as it is required to do under 29 C.F.R. § 825.305(d)[1] (providing that "[t]he employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency").  Second, Sorrell argues that Rinker failed to insist that a second medical opinion be submitted, as is its right under 29 U.S.C. § 2613(c)(1) (providing that "[i]n any case in which the employer has reason to doubt the validity" of a medical certification submitted by an employee, "the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer").  Finally, Sorrell argues that Rinker never sought clarification of Dr. Opremcak's medical certification, as it is permitted to do under 29 C.F.R. § 825.307(a) (providing that "a health care provider representing the employer may contact the employee's health care provider, with the employee's permission, for purposes of *clarification* and authenticity of the medical certification") (emphasis in original).  According to Sorrell, the fact that Rinker approved his leave without complying with or availing itself of any of these procedures precludes Rinker from now contesting his entitlement to that leave.

We are primarily concerned with Sorrell's argument concerning Rinker's alleged failure to comply with 29 C.F.R. § 825.305(d) because that provision, unlike the others invoked by Sorrell, imposes an affirmative duty on an employer that finds a medical certification incomplete; the language in the other two provisions—i.e., 29 U.S.C. § 2613(c)(1) and 29 C.F.R. § 825.307(a)—is merely permissive.  *See Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 386 (4th Cir. 2001) (holding that "[b]ecause the term 'may' is permissive, the plain language of the statute indicates that an employer who questions the validity of a certification has the option of seeking a second and third opinion, without being required to do so," and that "the plain language of the Act does not suggest that an employer must pursue these procedures *or* be forever foreclosed from challenging whether an employee suffered from a serious health condition"); *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000) (holding that "[w]e do not read § 2613(c)(1) as requiring an employer to obtain a second opinion or else waive any future opportunity to contest the validity of the certification").

Pursuant to 29 C.F.R. § 825.305(d), if Rinker found Dr. Opremcak's medical certification incomplete, it had a duty to advise Sorrell of that fact and to provide Sorrell a reasonable opportunity to cure any such deficiency in the certification.  Although we have located no cases from this Court that provide any guidance with respect to this issue, several district courts in other jurisdictions have held that an employer may not assert incompleteness of a medical certification as grounds for disciplining an employee where the employer never notified the employee of the problem or gave him an opportunity to cure it.  *See, e.g., Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 466 (D.N.J. 2001) ("termination is not an appropriate response for an inadequate certification" because "[s]ection 825.305(d) provides that where an employer finds a certification incomplete, it must give the employee a reasonable opportunity to cure any deficiencies"); *Sims v. Alameda-Contra Costa Transit Dist.*, 2 F. Supp. 2d 1253, 1266-68 (N.D. Cal. 1998) (holding that although the employee's medical certification was incomplete because it failed to certify that his serious health condition lasted the full duration of his absence from work, the employer waived its right to argue that the employee did not suffer from a serious health condition by failing to notify the employee of the problem or to afford him the opportunity to cure it).

It is unclear from the record on appeal whether Rinker found Dr. Opremcak's medical certification "incomplete" so as to trigger its duty under 29 C.F.R. § 825.305(d).  *See Shtab v.*

---

[1]Sorrell's brief erroneously identifies this regulation as 29 C.F.R. § 825.305(c).

*Greate Bay Hotel & Casino, Inc.*, 173 F. Supp. 2d 255, 265 (D.N.J. 2001) (holding that "the predicate question of whether the missing dates in [an employee's] medical certification rendered his application complete but unsupportive of [his] leave request or incomplete and capable of correction is a question of material fact for a jury to decide"). Although there is relatively little case law interpreting the term "incomplete" as it is used in this regulation, we note that some courts have equated it with the term "inadequate." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1209 n.12 (11th Cir. 2001); *see also Baldwin-Love v. Elec. Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1234 (M.D. Ala. 2004) (holding that "[a]n incomplete certification is akin to an inadequate certification or a certification that fails to provide the information requested by the employer," but "is not the same as a certification that is non-existent or that has not been provided to the employer").

Although we offer the foregoing observations as guidance, the applicability and impact of 29 C.F.R. 825.305(d)—along with the other provisions referenced above—is a matter for the district court to consider in the first instance on remand.

### III.

In light of the above, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.