Kathleen NAGLE, Plaintiff,

v.

ACTON–BOXBOROUGH REGIONAL
SCHOOL DISTRICT, Defendant.

Civil Action No. 07–11577–RCL.

United States District Court,
D. Massachusetts.

Sept. 25, 2008.

Mark A. Hickernell, Alan J. McDonald, Jason R. Powalisz, McDonald, Lamond & Canzoneri, Southborough, MA, for Plaintiff.

Deborah I. Ecker, Leonard H. Kesten, Brody, Hardoon, Perkins & Keston, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

Kathleen Nagle ("Nagle") brings a claim against her employer, the defendant Acton–Boxborough Regional School District ("School District"), for allegedly terminating her employment in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, et. seq. ("FMLA"). The School District argues in this summary judgment motion that Nagle was not an "eligible employee" under the FMLA because she did not work the number of hours required by the statute prior to taking her leave. The School District thus asks that the Court grant summary judgment on this,

the sole count in the complaint. Nagle, however, contends that the School District should be equitably estopped from asserting a defense of non-coverage under the FMLA.

## I. INTRODUCTION

### A. Procedural Posture

On August 23, 2007, Nagle filed a one-count complaint ("Compl.") against the School District alleging that she was terminated in violation of the FMLA. [Doc. No. 1]. The School District filed its Answer on November 1, 2007. On January 29, 2008, the School District filed a Motion for Summary Judgment, a Memorandum in Support ("Def.Mem."), a Statement of Undisputed Facts ("Def.SOF"), and various exhibits in support. [Doc. No. 11]. On February 26, 2008, Nagle filed a Rule 56(f) Response to Defendant's Motion for Summary Judgment, describing why the motion was premature, to which the School District responded on February 28, 2008.

On April 15, 2008, this Court entered an order giving Nagle twenty days to provide evidence or engage in discovery as to the hours worked and directing her to file her opposition to the Motion for Summary Judgment. On May 5, 2008, Nagle filed an Opposition to the Motion for Summary Judgment ("Pl.Mem.") [Doc. No. 15], an affidavit prepared and signed by her ("Nagle Aff.") [Doc. No. 16], and supporting exhibits. [Doc. No. 17, 18].

The Court held a motion hearing on May 27, 2008, and took the motion under advisement. It also requested that the parties file supplemental memoranda addressing the issue of whether equitable estoppel could be invoked against the defendant School District, as the School District is a governmental entity. The School District filed its Supplemental Memorandum in Support of the Motion for Summary Judgment on June 9, 2008, and Nagle filed her Supplemental Opposition to the Motion for Summary Judgment on June 10, 2008.

### B. Undisputed Facts

Nagle was employed as a campus monitor for the School District until her termination on July 12, 2005. Def. SOF ¶ 1. She was employed by the School District for approximately seven years, from 1979 to 1982 and then again from 2000 to 2005. Nagle Aff. ¶ 2.

Nagle's husband suffered from multiple serious health conditions, including Crohn's disease and blood infections, and he was hospitalized many times prior to his death on June 2, 2005. *Id.* ¶ 3.

Nagle requested leave pursuant to the FMLA in January 2004, as a result of which she met with George Frost, the Deputy Superintendent for the School District at the time. Nagle Aff. ¶ 4; Def. SOF ¶ 2. The parties dispute whether Frost told Nagle that she could take protected FMLA leave, or whether he explained that she was not eligible for FMLA leave but that she could take a non-FMLA leave, during which the School District would continue her health insurance. Def. SOF ¶ 2–3; Pl. Mem. 3. By letter dated March 9, 2004, Nagle thanked Frost for allowing her to take FMLA leave. Nagle Aff. ¶ 5.

At the time of her January 2004 leave request, Nagle had worked fewer than 1250 hours during the prior twelve month period. Def. SOF ¶ 4; Pl. Mem. 2. The School District never provided Nagle with written notice that it had designated her leave of absence as FMLA leave. Def. SOF ¶ 6; Pl. Mem. 2.

On February 18, 2005, Nagle, upon suggestion of the assistant to the school principal, Lani DeRome ("DeRome"), requested another leave pursuant to the FMLA.

Def. SOF ¶ 7; Pl. Mem. 2; Nagle Aff. ¶ 8. In March 2005, during her leave, Nagle met with Frost and expressed gratitude for the FMLA leave. Nagle Aff. ¶ 11. According to Nagle, Frost did not explain that she was on non-FMLA leave. *Id.* When they met again during Nagle's leave, Frost allegedly told Nagle that he could put her on and off FMLA leave at his discretion because the leave did not need to be taken all at once. Id. ¶ 12. Nagle returned to work in April 2005. *Id.*

There is no dispute that in the twelve month period prior to her February 18, 2005 request for FMLA leave, Nagle worked fewer than 1250 hours and that the School District never provided Nagle with written notice that it was going to designate her 2005 leave as FMLA leave. Def. SOF ¶ 10–11; Pl. Mem. 2.

On May 10, 2005, when her husband was again hospitalized, Nagle informed DeRome that she was going back on FMLA leave, which DeRome said was fine. Nagle Aff. ¶ 13. Nagle's husband died on June 2, 2005. Nagle Aff. ¶¶ 3, 14. Two weeks later, Nagle tried to return to work, but DeRome told her over the telephone it was not necessary and to take care of herself and her children. Nagle Aff. ¶ 14. Around that time, Nagle and Frost met again and Frost assured Nagle that she had "nothing to worry about," which Nagle took to mean that her job was secure. Nagle Aff. ¶ 15. The school year ended that month. Nagle Aff. ¶ 16.

On July 12, 2005, Nagle was terminated from her position. Nagle Aff. ¶ 17.

According to Nagle, at all times during her leave of absence, she would have returned to work immediately had she been told she was not out on protected FMLA leave and that her job was in jeopardy. Nagle Aff. ¶ 19. She explained by affidavit that she only took the leave after being granted FMLA leave and receiving multi-ple assurances from Frost and DeRome that she was out on protected FMLA leave. Nagle Aff. ¶ 20.

## C. Federal Jurisdiction

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to demonstrate that a trier of fact could reasonably find in her favor. *Id.* at 322–25, 106 S.Ct. 2548.

In evaluating the record to decide whether there is a genuine issue of material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997).

### B. The FMLA

The FMLA defines an "eligible employee" as "an employee who has been employed (i) for at least 12 months by the employer ...; and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2).

The School District argues that Nagle's complaint must fail because she was not an "eligible employee" under the FMLA, as she was not employed for at least 1250 hours of service during the twelve month period immediately preceding the commencement of her leave as required under FMLA. Def. Mem. 5. The School District claims that because Nagle does not meet the definition of an "eligible employee," she cannot claim that the School District violated the FMLA by terminating her employment, and therefore the School District is entitled to judgment as matter of law. *Id.*

Nagle does not dispute that she did not work the required number of hours during the twelve month period prior to her leave in order to be an "eligible employee" under FMLA. Def. SOF ¶¶ 4, 10–11; Pl. Mem. 2.

Rather, as Nagle argues in her opposition, the "primary issue in dispute is whether the School District told Nagle she was entitled to, and/or properly out on, protected FMLA leave." Pl. Mem. 7. She is correct that there is a genuine dispute on this issue, given the evidence put forward by the School District. *Id.* at 7–8. She contends that this disputed fact is material because if the School District or its agent(s) told Nagle that she could take or was on protected FMLA leave, and Nagle relied upon that representation to her detriment, the School District would be equitably estopped from asserting Nagle's ineligibility as an "eligible employee" under FMLA as a defense to her claim. *Id.* at 8.

The First Circuit, in another FMLA case, has explained the requirements and goals of equitable estoppel:

Simply stated, equitable estoppel prevents one "from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or

such that a reasonable man would rely upon the representations made." *Clauson v. Smith*, 823 F.2d 660, 662 (1st Cir.1987) (citations and internal quotation marks omitted). It requires that (1) the party to be estopped must know the facts; (2) that party must intend that his conduct be acted upon (or must act in a way that leads the party asserting the estoppel to believe it is so intended); (3) the latter must be ignorant of the true facts; and (4) he must rely on the estopping conduct to his detriment. *Id.* at 661.

*Plumley v. Southern Container, Inc.*, 303 F.3d 364, 374 (1st Cir.2002).

The *Plumley* court further clarified that equitable estoppel "clearly presupposes that the person invoking the doctrine had a choice of actions to take and, of his own volition, changed position based on the conduct of, or representations made by, the other party." *Id.* There, the court concluded that a plaintiff did not rely to his detriment on the representation from his employer, as required, and thus equitable estoppel was inappropriate. *Id.*

■ The equitable estoppel doctrine is applicable to cases under the FMLA where the circumstances warrant its application. Several courts have held that employers may not assert ineligibility as a defense where the employer's own actions, words, mistakes or omissions caused the employee to be out on leave. *See Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 336 (6th Cir.2005), and cases cited. In *Sorrell*, the Sixth Circuit Court of Appeals instructed a trial judge, on remand, to consider whether equitable estoppel applied to bar an employer from challenging a plaintiff's entitlement to leave under the FMLA. The court pointed to cases from the Second, Seventh, and Eighth Circuit Courts of Appeal, observing, "several of

our sister circuits have held that, under the right circumstances, an employer may be equitably estopped from challenging an employee's entitlement to such leave." *Id.* *See also Minard v. ITC Deltacom Commc'ns, Inc.,* 447 F.3d 352, 359 (5th Cir.2006) ("[A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an 'eligible employee' and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.").

### C. Equitable Estoppel Applicability against Governmental Entity

The School District is a governmental entity. "[E]stoppel against the government if it exists at all is hen's-teeth rare." *Costa v. I.N.S.,* 233 F.3d 31, 38 (1st Cir. 2000).

■ Although the application of estoppel against the government is possible, *see, e.g., Ramirez–Carlo v. United States,* 496 F.3d 41, 49 (1st Cir.2007) (holding that equitable estoppel may be invoked against the federal government in a claim under the Federal Tort Claims Act), it requires proof of an additional element. As the First Circuit Court of Appeals has explained, "[i]t is firmly settled that a party seeking to raise estoppel against the sovereign must, at the very least, demonstrate that government agents have been guilty of affirmative misconduct." *Dantran, Inc. v. U.S. Dep't of Labor,* 171 F.3d 58, 67 (1st Cir.1999). *See also Ortiz–Pinero v. Rivera–Arroyo,* 84 F.3d 7, 16–17 (1st Cir.1996) (noting that "application of the equitable estoppel doctrine against governmental entities, including municipalities, is narrowly circumscribed" and that even if estoppel is

available against a governmental entity, "affirmative misconduct" is required).

While there "is no settled test" for "affirmative misconduct," it requires "more than simple negligence." *Ramirez–Carlo,* 496 F.3d at 49. The First Circuit has explained that "affirmative conduct" requires "an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party." *Id.* (quoting *Watkins v. U.S. Army,* 875 F.2d 699, 707 (9th Cir. 1989) (en banc)).

The First Circuit has not yet addressed the issue of equitable estoppel in the FMLA context. For three reasons, this Court concludes that the record in this case will not support a viable claim of equitable estoppel. First, perhaps to forestall precisely the dispute that has arisen here, regulations issued under the FMLA require that such leave be expressly so designated by the employer in writing. *See* 29 C.F.R. § 825.208. Here, it is undisputed that the School District never issued any such written designation. Second, this Court considers *Phelps v. Federal Emergency Management Agency,* 785 F.2d 13 (1st Cir.1986)—a case cited by neither party—to be directly on point. There, FEMA agents assured the Phelps that they had done everything necessary to perfect their claim for flood insurance coverage. They had not—and the claim of equitable estoppel did not save them. *Ibid. Phelps* has never been questioned in the First Circuit and its reasoning applies with full force here. Third, while here (resolving all disputes in favor of Nagle) there were affirmative representations by the School District agents, the record will not support an inference that anything more than their negligent misunderstanding was at work. This is not evidence of affirmative misconduct. Without affirmative governmental

misconduct, there can be no equitable estoppel.

## III. CONCLUSION

Summary judgment must, therefore, enter for the School District.

SO ORDERED.