# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 20, 2014 Session

## CONNIE HAYES v. STATE OF TENNESSEE

### Direct Appeal from the Chancery Court for Davidson County
No. 12-1525-I      Claudia C. Bonnyman, Chancellor

---

### No. M2013-01811-COA-R3-CV - Filed July 10, 2014

---

This appeal involves the termination of a State employee. The employee was late for work on numerous occasions prior to and throughout 2010. She sustained an at-work injury in October 2010. On January 15, 2011, she was tardy for work and a termination proceeding was commenced shortly thereafter. Prior to her receipt of the letter recommending termination, the employee tendered a request for FMLA leave, which leave was approved *after* termination was recommended, but *before* termination was confirmed. The Civil Service Commission affirmed the employee's termination. The Chancery Court affirmed the employee's termination and it dismissed her interference with FMLA claim. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Jeffery S. Frensley, Nashville, Tennessee, for the appellant, Connie Hayes

Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen, Acting Solicitor General, John W. Dalton, Senior Counsel, Nashville, Tennessee, for the appellee, Tennessee Civil Service Commission

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

At all times relevant to this appeal, Appellant Connie Hayes was employed by the Department of Intellectual and Developmental Disabilities working as a Developmental Technician Supervisor I at Clover Bottom Developmental Center ("CBDC"). At the time of her termination, she had been employed by the State of Tennessee for approximately thirty-one years.

In September 2010, Dr. Stacey Dixon became the chief officer at CBDC. She testified[1] that when she took over the position, CBDC was under "significant hardship financially" and that she was "under great pressure to reduce costs[.]" She discovered "a significant problem with leave and attendance"–particularly, "a huge problem that some people did not come to work on time or at all"–that increased the center's reliance upon overtime and that, in her opinion, created an unsafe practice of forcing exhausted employees to care for the center's disabled residents.

In 2006, prior to Dr. Dixon's arrival, CBDC implemented a leave and attendance policy. The policy provided a six-minute grace period before an employee was considered tardy and it allowed an employee to be tardy and absent from work five times during a twelve-month period[2] without disciplinary action.[3] Upon the sixth tardy/absence, a written warning was given; upon the seventh tardy/absence, an employee faced suspension; and upon the eighth tardy/absence, an employee faced termination.[4]

To remedy the aforementioned problems and to bring the leave and attendance policy in line with the Department of Human Resources' policy for leave and attendance, Dr. Dixon

---

[1] The testimony cited herein is taken from the transcript of the hearing before the Civil Service Commission on October 11-12, 2011.

[2] The policy provided for disciplinary action when an employee "accrues (6) or more occurrences of unscheduled time away from work within a 12 consecutive month period, *or an unacceptable pattern of absence is documented*[.]" (emphasis added).

[3] Separate tracks existed for tardies and for absences; an employee could be tardy five times *and* absent five times without disciplinary action.

[4] Dr. Dixon testified that the 2006 policy provided for an oral warning upon the sixth tardy/absence, a written warning upon the seventh tardy/absence, a suspension upon the eighth tardy/absence, and termination upon the ninth tardy/absence. The record demonstrates that, prior to termination, Ms. Hayes received an oral warning, a written warning, and a suspension.

along with the management team, rewrote the 2006 policy.[5]  The new policy became effective December 1, 2010; however, tardies and absences already accrued under the old policy were carried over.  Under the new policy, both unapproved tardies and absences were considered "unapproved leave."  Thus, tardies and absences were added together for disciplinary purposes.  Additionally, pursuant to the new policy, the six-minute grace period was eliminated and disciplinary action commenced after the first occurrence of unapproved leave.

On October 15, 2010, Ms. Hayes suffered an on-the-job injury when she tripped over a rug, hitting her knee and thigh against a door edge.  She claimed injuries to her knee, upper thigh, and right elbow.

On December 16, 2010, Ms. Hayes completed and signed a request for intermittent leave under the Family and Medical Leave Act ("FMLA").  On December 23, 2010, Ms. Hayes' health care provider completed the requisite FMLA medical certification indicating that episodic flare-ups of hypertension and joint pain left Ms. Hayes unable to perform her job functions during two, eight-hour days per month.  According to Ms. Hayes, she sent the FMLA paperwork to the State via fax and personal delivery on or about January 1, 2011.  However, when she received no response, she re-faxed the paperwork to the same number on January 17, 2011.[6]  Employee Relations Officer Darla Goad received Ms. Hayes' FMLA request on January 18, Ms. Goad faxed the request to CBDC Unit Director Rosalyn Stephens on January 19, and Ms. Stephens signed and returned the fax on January 20.  On January 20, 2011, Ms. Goad approved Ms. Hayes' request for intermittent FMLA leave; she was allowed 450 hours of leave.  Such approval was confirmed in a January 31, 2011 letter to Ms. Hayes from Ms. Goad.[7]

---

[5]Dr. Dixon testified that the employees were informed of the new policy, and Ms. Hayes does not contend that she was unaware of its contents.

[6]Ms. Hayes testified that she slid the paperwork under the locked office door of CBDC benefits coordinator Judy Gammons and that she also sent the fax to Ms. Gammons; however, Ms. Gammons went on leave on December 7, 2010 and never returned to work prior to her death in April 2011.

[7]Ms. Goad testified that a note was placed on Ms. Gammons' door notifying employees of her medical leave and indicating that matters should be referred to Ms. Goad. She further testified that items were periodically retrieved from Ms. Gammons' office floor and handled accordingly.

Meanwhile, between January 1, 2010 and December 1, 2010, Ms. Hayes was tardy for work forty-six times; forty-one of those tardies occurred prior to October 2010.[8]   In December 2010, after implementation of the new policy, Ms. Hayes was tardy for work ten times.  Between January 1, 2011 and January 15, 2011, Ms. Hayes was again tardy for work ten times.

On January 15, 2011, Ms. Hayes was forty minutes late for work.  She testified that she telephoned "the unit," "assum[edly] prior to the time for her shift to begin, and spoke with Mr. O'Peak, who apparently functioned in the same role as Ms. Hayes.  She allegedly advised him that she was sick and unable to report to work, that she "[had] FMLA[,]"[9] and that she had a doctor's note excusing her absence.  According to Ms. Hayes, Mr. O'Peak informed her that he had no one to cover her shift, and therefore, Ms. Hayes decided to report to work, albeit forty minutes late.

Employee Relations Officer, Darla Goad, however, testified that an employee unable to timely report to work must, prior to the commencement of shift, notify his or her supervisor and leave a message on the telephone call-out log.  Ms. Hayes apparently did not comply with these requirements.  Ms. Goad testified that Ms. Hayes did not phone the call-log regarding her January 15, 2011 tardiness and testimony established that Mr. Nwoke–as opposed to Mr. O'Peak–was Ms. Hayes' supervisor.  Ms. Hayes did not present a doctor's note for her tardiness.

On January 25, 2011, Ms. Stephens issued a letter to Ms. Hayes indicating that Ms. Stephens had recommended that Ms. Hayes' employment be terminated.  The letter noted that Ms. Hayes had received an oral warning on January 21, 2010 for six previous tardiness incidents in December 2009 and January 2010; she had received a written warning on July 20, 2010 for a tardiness incident in July 2010; and that she had received a one-day suspension in September 2010 for six tardiness incidents in July and August 2010.  The letter further cited Ms. Hayes' forty-minute tardiness on January 15, 2011.  The letter explained that Ms. Hayes' "pattern of unexcused absences" had placed her in violation of Tennessee Department of Human Resources Rule 1120-10-.06(6), Habitual Pattern of Failure to Report for Duty[10] and in violation of CBDC Policy Leave and Attendance Index 505; Unapproved Leave D.1.,

---

[8]The spreadsheet detailing her tardiness indicates that timesheets were not available for the months of March and April 2010.  Apparently, Ms. Hayes did not work during those months.

[9]Ms. Hayes explained that she "assum[ed]" that she had FMLA leave because she "sent in the FMLA [paperwork] . . . back in January[.]"

[10]The disciplinary offense of "Habitual pattern of failure to report for duty at the assigned time and place" is now found in Rule 1120-10-.05.

effective December 1, 2010, which provides:

> Any leave taken without prior approval from the unit/department director or designee may be counted as an occurrence of unapproved leave. Unapproved late arrival to the employee's work station, leaving work early without approval, late return from an approved break, taking an unapproved break, an unexcused absence, or the failure to provide a physician's statement to justify sick leave (when requested) all count as occurrences of unapproved leave.[11]

On February 1, 2011, Ms. Hayes met with Darla Goad for a due process hearing regarding the January 25, 2011 letter of intent to terminate. By letter dated February 11, 2011, Dr. Dixon, CBDC Chief Officer, agreed with the recommendation and confirmed her decision to separate Ms. Hayes from State service.

On March 16, 2011, a Level IV Grievance Hearing was held. In a March 31, 2011 letter, the Commissioner of the Department of Intellectual and Developmental Disabilities upheld the decision by CBDC management to terminate her employment.

On October 11-12, 2011, a Level V Grievance Hearing was held before an Administrative Law Judge. The ALJ upheld Ms. Hayes' termination in an Initial Order, and Ms. Hayes unsuccessfully filed a Petition for Reconsideration of the Initial Order. Ms. Hayes then appealed to the Civil Service Commission, which adopted the ALJ's Initial Order upholding Ms. Hayes' termination.

On October 24, 2012, Ms. Hayes filed a Petition for Judicial Review in the Davidson County Chancery Court, again challenging her termination. The matter was heard on July 9, 2013, after which, the Chancery Court entered an Order, which incorporated its thorough oral ruling, affirming the decision of the Tennessee Civil Service Commission. Ms. Hayes timely appealed to this Court.

---

[11]As noted above, Ms. Hayes indicated to Mr. O'Peak on January 15, 2011, that she had a doctor's note excusing her absence that day. However, she apparently referenced the December 23, 2010 note for FMLA leave request purposes. Ms. Hayes does not argue on appeal that the FMLA healthcare provider certification rendered her January 15, 2011 "excused" aside from her broader argument related to retroactivity of her FMLA leave.

## II.  ISSUES PRESENTED

Appellant presents the following issues for review:

1.   Whether the decision to terminate Ms. Hayes' employment was arbitrary or capricious and characterized by an abuse of discretion or clearly unwarranted exercise of discretion; and

2.   Whether Ms. Hayes' termination is an interference with the exercise of her rights under the Family and Medical Leave Act.

For the following reasons, we affirm the decision of the chancery court.


## III.  DISCUSSION

### A.  *Whether Commission's Decision was Arbitrary or Capricious*

On appeal, Ms. Hayes argues that the Commission's decision to uphold her termination was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.  We review the Commission's decision using the same standard of review used by the chancery court. ***Davis v. Shelby County Sheriff's Dep't***, 278 S.W.3d 256, 264 (Tenn. 2009).  Judicial review is governed by the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322. *See* Tenn. Code Ann. § 27-9-114(b)(1).

> (h) The court may affirm the decision of the agency or remand the case for further proceedings.  The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) *Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion;* (emphasis added) or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the

light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

**Tenn. Code Ann. § 4-5-322**. (emphasis added).

"A decision is arbitrary or capricious if it 'is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.'" *City of Memphis v. Civil Service Com'n of City of Memphis*, 238 S.W.3d 238, 243 (Tenn. Ct. App. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Public Serv. Com'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)). In reviewing an agency's findings of fact, we apply the substantial and material evidence standard. *City of Memphis v. Civil Service Com'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007) (citing *Bobbitt v. Shell*, 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003)). "Substantial and material evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Id.* (citations omitted); *see also Mitchell v. Madison County Sheriff's Dept.*, 325 S.W.3d 603, 619 (Tenn. Ct. App. 2010) ("The Commission's factual findings may be rejected 'only if a reasonable person would necessarily draw a different conclusion from the record.'") (citations omitted).

In her appellate brief, Ms. Hayes claims that her FMLA leave should be made retroactive to her January 15, 2011 tardiness, which prompted her termination, because, according to Ms. Hayes, at the time of the decision to terminate her employment, her employer was aware of her medical condition and her need for intermittent leave, and it had approved her request under the FMLA for intermittent leave. She argues that denying retroactivity elevates form over substance because had the leave request been acted upon prior to January 15, 2011, her tardiness or absence would have been covered and no disciplinary action taken.

As evidence of the department's alleged knowledge, Ms. Hayes points to Unit Director Rosalyn Stephens' testimony that the January 25, 2011 letter recommending termination was sent to human resources–the division in which Ms. Goad is employed–prior to being sent to Ms. Hayes and to her own testimony that in December 2010 she spoke to Ms. Goad about the possibility of obtaining FMLA leave. She claims it is "inexplicable" that Ms. Goad would not have discussed the FMLA request with Ms. Stephens, and thus, that Ms. Stephens, who sent the letter recommending termination on January 25, must have been

aware that Ms. Hayes' FMLA intermittent leave request had been granted on January 20.

We find the evidence does not support Ms. Hayes' assumption that the decision to terminate her employment was made with knowledge of her FMLA request. Ms. Stephens testified that January 15, 2011 fell on a weekend and that the termination process commenced when she returned to work on January 18 or 19 and learned of Ms. Hayes' tardiness. She explained that she drafted the letter recommending termination on January 18 or 19 *before* she had any knowledge of Ms. Hayes' FMLA request, and further that Ms. Hayes never offered any explanation to her as to why she was tardy on January 15, 2011. The Commission made a factual finding that Ms. Hayes never spoke with Ms. Stephens regarding the January 15 tardiness or the reasons for it.

In contrast to Ms. Hayes' testimony that she spoke with Ms. Goad in December 2010 about obtaining FMLA leave, Ms. Goad testified that she could not recall ever discussing FMLA leave with Ms. Hayes and that prior to receiving the FMLA request, she was unaware of Ms. Hayes' injury. Ms. Goad testified that she received the letter recommending termination from Ms. Stephens *before* she received Ms. Hayes' FMLA request. She explained that she received the FMLA request on January 18, that she faxed the request to Ms. Stephens on January 19 for her approval, and that Ms. Stephens signed and returned the fax on January 20. She processed and approved Ms. Hayes' FMLA request, notwithstanding the pending termination, because she was unsure whether lesser discipline would be imposed. Ms. Goad testified that Ms. Hayes never offered any explanation to her as to why she was tardy on January 15, 2011. As with Ms. Stephens, the Commission made a factual finding that Ms. Hayes never spoke with Ms. Goad regarding the January 15 tardiness or the reasons for it.

In her appellate brief, Ms. Hayes also challenges the chancery court's finding that she had "so many incidents of tardiness" that she was "too far along the disciplinary track for the [FMLA] to protect her." She contends that she was not on a disciplinary track because "there is absolutely no evidence in th[e] record that [CBDC] was seeking the dismissal of Ms. Hayes prior to the January 15, 2011 incident or that she would have been terminated but for that incident."

Ms. Hayes also cites the chancery court's finding that "[g]iven all [of] her medical problems[,] it does appear that she needed those two days off" per month. The chancery court went on to state "this was, however, too late to save her from her history of tardiness." Ms. Hayes claims that the chancery court's finding of need for leave renders arbitrary and capricious the decision to begin termination proceedings based upon exercised leave.

-8-

Like the chancery court, we are not unsympathetic to Ms. Hayes who has been separated from her employment after more than thirty years of State service. Even so, we cannot say that the Commission's decision to uphold Ms. Hayes' termination was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The evidence in the record before us clearly indicates that Ms. Hayes was habitually late for work for several years prior to her termination. Moreover, the record demonstrates, without serious dispute, that Ms. Hayes was on a progressive disciplinary track prior to the January 15, 2011 incident which culminated in her termination. With the exception of the January 15, 2011 incident, each incident of tardiness which formed the basis for termination occurred prior to Ms. Hayes' injury in October 2010: four in December 2009, two in January 2010, two in July 2010, and five in August 2010. These incidents did not go undisciplined; an oral warning was issued in January 2010, a written warning was issued in July 2010, and a one-day suspension was implemented in September 2010.

Although Ms. Hayes signed her FMLA paperwork on December 16, 2010 and her healthcare provider completed the requisite FMLA medical certification on December 23, 2010, the State did not receive Ms. Hayes' FMLA application until January 17, 2011[12]–two days *after* the tardiness incident which led to termination. Coincidentally, Ms. Hayes' FMLA leave request was approved on January 20 before her termination was confirmed on January 31. However, the record demonstrates that the termination process commenced on January 18 or January 19 *prior to* the approval of Ms. Hayes' FMLA request on January 20, that termination was recommended by Ms. Stephens *before* she learned of Ms. Hayes' FMLA application, and that Ms. Hayes never informed Ms. Stephens as to why she was absent on January 15, 2011.

Ms. Hayes clearly exhibited a pattern of habitual tardiness, violating Tennessee Department of Human Resources Rule 1120-10-.06(6), Habitual Pattern of Failure to Report for Duty and CBDC Policy Leave and Attendance Index 505; Unapproved Leave D.1. The conduct subject to discipline occurred prior to any FMLA request and termination proceedings were commenced prior to approval of such request without knowledge that such

---

[12]Ms. Hayes testified that she sent her FMLA paperwork to the State via fax and personal delivery on or about January 1, 2011; however she received no response from the State and re-faxed the paperwork on January 17, 2011. The FMLA paperwork was entered as an exhibit before the Commission, and it included a date stamp indicating that it had been faxed on January 17. Darla Goad, however, testified that January 17 was a holiday and that the fax was retrieved the morning of January 18. The Commission made a factual finding that Ms. Hayes' "FMLA application was not received by the HR office until January 17, 2011[.]" Finding substantial and material evidence to support this finding, we will utilize January 17 as the date Ms. Hayes' FMLA application was received.

request had been made. Ms. Hayes has cited no authority indicating that an FMLA request trumps an ongoing disciplinary matter, and we have found none. In sum, we find the Commission did not disregard the facts or circumstances of the case and we find reason for its decision to uphold Ms. Hayes' termination. Thus, we find that the Commission's decision to uphold Ms. Hayes' termination is not arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## *A. Interference with FMLA*

Having determined that the Commission's decision to uphold Ms. Hayes' termination was not arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, we now consider whether the State interfered with the exercise of her rights under the Family and Medical Leave Act.

"The FMLA prohibits qualifying employers from 'interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under th[e] [FMLA].'" ***Wyson v. Dow Chemical Co.***, 503 F.3d 441 (6th Cir. 2007) (quoting 29 U.S.C. § 2615(a)(1)). To succeed on an interference claim, an employee must demonstrate, by a preponderance of the evidence, the following:

> (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2);
> (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4);
> (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1);
> (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1);[13] and
> (5) the employer denied the employee FMLA benefits to which he was entitled.

***Id.*** (citing *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)). "As to the final element, if an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which she is entitled." ***Ritenour v. Tenn. Dept. of Human Servs.***, No. 3:09-0803, 2010 WL 3928514, at *9 (M.D. Tenn. Oct. 4, 2010) (citing *Wysong*, 503 F.3d at 447). "An employer is liable for interference if it uses FMLA leave as a negative factor in deciding to terminate

---

[13]29 U.S.C. § 2612(e)(1) requires 30 days' notice when an employee intends to take leave due to the birth of a child or the placement of an adopted child.

an employee." ***Id.*** (citing *Wysong*, 503 F.3d at 447).

On appeal, Ms. Hayes asserts that her January 15, 2011 tardiness was the result of a medical situation which would have been covered under the FMLA, that the State was aware of her need for intermittent leave prior to its commencement of the termination proceedings, and, therefore, that it should have allowed her to exercise FMLA leave on January 15, 2011. Its disallowance and resulting termination, she maintains, interfered with the exercise of her rights under the FMLA.

Ms. Hayes' FMLA interference claim fails for a number of reasons. First, Ms. Hayes was not "entitled to leave" on January 15, 2011, as her application had not yet been approved by, or even submitted to, the State. Second, the State did not deny Ms. Hayes FMLA benefits to which she was entitled; instead, it *granted* her FMLA benefits merely two days after her application was received.

In any event, "[t]he FMLA is not a strict liability statute, and 'interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." ***Ritenour***, 2010 WL 3928514, at *10-11 (quoting *Edgar v. JAC Prods., Inc.*, 443 F.2d 501, 508 (6th Cir. 2006); *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 979 (6th Cir. 2005)) (affirming summary judgment in favor of the employer on the employee's FMLA interference claim where the employee failed to contact her supervisor concerning her absences in accordance with the employers' policies on absenteeism and job abandonment); *see also Adams v. Auto Rail Logistics, Inc.*, 504 Fed. Appx. 453, 457 (6th Cir. 2012) ("[A]n employer may lawfully dismiss an employee and prevent that employee from exercising rights under the FMLA if the employer would have dismissed the employee regardless of the employee's taking of FMLA leave."). Here, Ms. Hayes accrued numerous tardies along the progressive disciplinary track prior to her injury in October 2010. The evidence demonstrates with regard to the January 15, 2011 tardiness incident which was the proverbial "straw that broke the camel's back," that Ms. Hayes failed to contact her supervisor and/or the telephone call-out log or to provide a doctor's excuse in accordance with her employer's policies. Accordingly, CBDC effectively demonstrated that it would have terminated Ms. Hayes' employment for failing to comply with leave requirements notwithstanding any attempt to utilize FMLA leave. For these reasons, Ms. Hayes has failed to establish the elements of an interference with FMLA claim, and we affirm the chancery court's dismissal of such claim.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Connie Hayes, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.