OPINION
BERNICE B. DONALD, Circuit Judge.
Petitioner Warren English, a state prisoner, appeals the district court’s dismissal of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. A jury convicted English of third degree criminal sexual conduct in Michigan state court (“the trial court”). After his conviction, the trial court granted English’s motion for new trial based on a juror’s failure to disclose during voir dire that she had been sexually molested as a child. The Michigan Court of Appeals (“the court of appeals”) reversed the trial court’s grant of a new trial and reinstated English’s conviction and sentence. The Michigan Supreme Court denied review in a 3-2 decision. English then filed a habeas petition in federal district court (“the district court”) in which he raised several constitutional claims, including denial of his rights to due process and to a fair and impartial jury. The district court dismissed English’s petition pursuant to Rule 4 of the Rules Governing § 2254 Cases, finding that English had failed to raise a meritorious federal claim. For the reasons set forth herein, we REVERSE the district court’s judgment and REMAND for further proceedings consistent with this opinion.
I.
In 2006, English pled not guilty to third-degree criminal sexual conduct and proceeded to trial on allegations that he had non-consensual intercourse with a seventeen-year-old acquaintance who was asleep at his home following a party. He was convicted and sentenced to a prison term of twenty-one months to fifteen years. English appealed on several grounds not before this court and also filed a motion for new trial based on his discovery that a juror, identified as Juror A, had failed to disclose during voir dire that she had been the victim of sexual abuse as a child by a member of her household. The factual basis for the motion was set forth in the district court’s opinion as follows [1]:
Voir dire took place on January 9, 2006. In the trial court’s opening statement to the jury pool, the trial court stressed the need for jurors to be free from bias, prejudice, or sympathy towards either side. (TR, p. 6). The trial court informed the jury pool that the purpose of voir dire was to choose a fair and impartial jury to hear the case. (TR, p. 7). The trial court further informed the jury pool that questions would be asked to determine if members of the jury pool *736 had “any opinions or personal experiences that might influence you for or against the prosecution, the defendant, or any witnesses[.”] (TR, p. 7). The Court invited the jury pool to ask if any individual did not hear or understand a question. (TR, p. 7). The Court also made clear that any of the potential jurors could ask for a private conference outside of the hearing of the other members of the jury pool. (TR, p. 7).
The members of the jury pool who had not been originally selected were asked to pay close attention to the questions because every question would not be repeated as jury selection progressed. (TR, p. 10).
One of the potential jurors indicated that she and her sister had been molested by their stepfather. (TR, p. 32). This disclosure was made in open court and within the hearing of all members of the jury pool. (TR, p. 32). A separate record was made, and the potential juror was excused for cause. (TR, pp. 33-34). In making this decision, the trial court remarked, within the hearing of the entire jury pool, that it was difficult in prosecutions for sexual crimes for a juror to be objective when that juror had herself or himself been sexually abused. (TR, p. 33). The trial court informed the jury pool that this juror had been excused for cause. (TR, p. 35.) The jury pool thus had every reason to believe that being a victim of sexual molestation would result in a potential juror being excused.
The trial court made the same observation when a second potential juror admitted that she would have trouble being impartial because her mother and her mother’s sister had been sexually molested. (TR, p. 90).
Another potential juror informed the Court and the parties that his son had been accused of sexually molesting a child. (TR, p. 36). This disclosure was made in open court within the hearing of the rest of the jury pool. (TR, pp. 36-37). A separate record was made, and the potential juror was dismissed for cause. (TR, pp. 40-41).
A potential juror was excused for cause because that potential juror admitted that he might be more pre-disposed to believe the complainant or a member of her family. (TR, pp. 42^43). Another potential juror was interviewed in chambers and dismissed for cause because a cousin had sexually molested her and had gone to prison for his crime. (TR, pp. 45-46).
In sum, when a potential juror was excused for cause, the jury pool was usually informed that the juror had been dismissed for cause. (E.g., TR, pp. 47, 76).
The juror whose omission resulted in the New Trial Order was identified as Juror A. (TR, p. 103). Juror A stated that she had heard all of the questions that had been asked, and may have answered some of them differently. (TR, p. 103). Although offered an opportunity to discuss this issue, Juror A declined a private conference. (TR, pp. 103-104). Juror A disclosed that she had been the victim of a crime. (TR, p. 104). The crime was breaking and entering and had taken place some eleven years ago. (TR, p. 104). She also disclosed that her brother-in-law was a police officer in a nearby community. (TR, p. 104).
Juror A was the last juror to be chosen. (TR, p. 107). She had thus had the benefit of all the disclosures made by other jurors and had observed how jurors who had admitted to being a victim of sexual abuse had been excused for cause.
*737 The New Trial Motion was based on allegations that two jurors, [including] Juror[ ] A ... had not been forthright during voir dire.... A hearing was held on September 29, 2006. Juror A was called as the first witness. The trial court began by reading Juror A her rights, including the possibility of a perjury charge. (TR, pp. 5-6). Juror A informed the trial court that she was willing to testify without consulting with or having an attorney present. (TR, p. 7).
Juror A recalled that she had participated in defendant’s jury selection. (TR, p. 7). She recalled the Court telling the jury pool that it was important that the pool be free from bias, prejudice, or sympathy for either side. (TR, p. 8). She also recalled the jury pool being told that they should listen to the questions posed to other jurors so as to learn when responses might be required. (TR, p. 8).
Although Juror A was the last juror called to the box for voir dire, she had paid attention to what had been happening to other members in the jury pool. (TR, p. 9). Juror A vaguely remembered a potential juror named Ms. Curtis who had informed the Court and the parties that she and her sister had been molested by their stepfather. (TR, p. 9). She also vaguely recalled that Ms. Curtis was invited into a conference with the Court and that after that conference, Ms. Curtis was excused for cause. (TR, p. 9).
She could not remember other jurors who had been excused for cause, including one who had admitted to being a victim of sexual molestation. (TR, p. 10).
Juror A did recall telling the Court that she had heard the answers to questions asked of other members of the jury pool. (TR, p. 11). Juror A recalled informing the Court that she had been the victim of a break-in. (TR, p. 12). She had also disclosed that her brother-in-law was a police officer. (TR, p. 13).
Juror A did admit that there was something that she did not disclose. (TR, p. 14). She explained that no one was prosecuted and that she did not talk with the police. (TR, p. 14). She and her abuser had since reconciled. (TR, p. 14).
Juror A testified that she was a victim of a sexual assault when she was 8 years of age. (TR, p. 15). She was assaulted by a member of her household. (TR, p. 15). She did not disclose the sexual assault during voir dire. (TR, p. 15).
On cross examination, Juror A testified that she was not trying to hide anything from the trial court or from the lawyers. (Tr, p. 16). When she spoke to the defense’s private investigator, she thought that she had disclosed her sexual assault. (TR, p. 16). She now realized that she was mistaken and that she had not informed the trial court or the parties about her past sexual assault. (TR, p. 16).
Juror A denied that her past sexual experience had caused her to be biased against the defendant. (TR, p. 16). Juror A affirmed that the recollections were sometimes vague because of the amount of time that had passed between voir dire and the date of the hearing. (TR, p. 17). Juror A also affirmed that she had been paying attention during voir dire. (TR, p. 17).
Juror A testified that she thought there would have to have been a conviction or a report to the police before her past sexual experience needed to be disclosed. (TR, p. 18). Juror A opined that her past experience did not inter *738 fere with her ability to be a fair juror in defendant’s case. (TR, p. 20).
In response to a question from the trial court, Juror A affirmed her prior belief that she had disclosed the sexual assault during voir dire. (TR, pp. 22-23).
The trial court found Juror A did not honestly answer a material question on voir dire and that it was not relevant that Juror A was convinced she was fair and impartial. The court found that Juror A had a duty to disclose the fact that she had been a victim of sexual abuse and she knew she had the duty to disclose the information. If Juror A had honestly answered the question, the court found, English’s counsel or the court sua sponte would have excused her for cause. If that failed, defense counsel could have used a remaining peremptory strike. Accordingly, the court granted English’s motion for a new trial based upon the failure of Juror A to disclose the fact that she had been the victim of sexual abuse. The State appealed.
On December 4, 2007, the court of appeals held that the trial court abused its discretion in granting English a new trial, finding that the trial court had not used the correct legal standard in analyzing English’s claim. People v. English, No. 269887, 2007 WL 4245412 (Mich.Ct.App. Dec. 4, 2007) (per curiam). The court set aside the trial court’s order and reinstated English’s conviction and sentence.
English sought review by the Michigan Supreme Court, arguing, among other things, that he had been denied his Sixth and Fourteenth Amendment right to a fair and impartial jury. The Michigan Supreme Court denied the application, with two justices dissenting. People v. English, 480 Mich. 1060, 743 N.W.2d 909 (2008).
Having exhausted his direct appeals, English filed a request for relief from judgment with the trial court, which the court denied. In its order the trial court offered these reflections:
I had granted the motion for new trial because I felt that the parties conducted the voir dire under the belief the jurors were acting pursuant to their oath and would “answer truthfully, fully and honestly all the questions you will be asked.” I also found that despite the jurors [sic] statement that her prior undisclosed experience of being a victim in a sexual assault did not bias her while sitting as a juror in this sexual assault case, I thought it may subconsciously. In addition, even if she was not biased and may not have been excused for cause the attorneys may have used a preempting [sic] challenge to excuse her but was [sic] denied this opportunity by the jurors [sic] failure to comply with the oath she took.
All of these arguments were made to and disregarded by the Court of Appeals and Supreme Court. They also did not find it necessary to remand the issue to the trial court for further fact finding or rulings. I do not have to agree with the reasoning of the appellate courts but I do have to follow their rulings.
English then filed a § 2254 habeas petition. The district court summarily dismissed the petition on December 21, 2009 under Rule 4 of the Rules Governing § 225J/. Cases,[2] finding that English’s fed *739 eral claims lacked merit on their face. We granted a Certificate of Appealability only as to the fair and impartial juror issue. Our analysis of that issue leads us to reverse and remand.
II.
A.
We review de novo a district court’s legal conclusions in a habeas petition ruling. Lucas v. O’Dea, 179 F.3d 412, 416 (6th Cir.1999).
The question of a challenge of a prospective juror for bias is a “factual issue” subject to § 2254(d), which requires a federal reviewing court to accord any findings of the state courts on factual issues a “presumption of correctness.” Wainwright v. Witt, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (citing Patton v. Yount, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)).
B.
The Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury....” U.S. CONST. amend. VI. In McDonough Power Equipment, Inc. v. Greenwood, the Supreme Court recognized that the jury selection process “serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors,” and that the “necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.” 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). “The motives for concealing information may vary, but only those reasons that affect a juror’s impartiality can truly be said to affect the fairness of a trial.” Id. at 555, 104 S.Ct. 845.
Declaring that a litigant is “entitled to a fair trial but not a perfect one,” id. at 553, 104 S.Ct. 845, the McDonough Court held that a defendant who discovers that a juror has withheld material information is entitled to a new trial only if the juror’s failure to disclose denied the defendant his right to an impartial jury. Id. at 556, 104 S.Ct. 845. In order to obtain a new trial based on a juror’s non-disclosure during voir dire, the defendant “must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.” Id.
Challenges for cause allow the removal of panel members only “on a narrowly specified, provable and legally cognizable basis of partiality,” Swain v. Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled on separate grounds by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), “such as a personal relationship with a party, witness, or attorney in the litigation, or a biased state of mind concerning a party or issue in the case.” United States v. Annigoni, 96 F.3d 1132, 1138 (9th Cir.1996), overruled on separate grounds by Rivera v. Illinois, 556 U.S. 148, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). A finding of bias is thus central to the McDonough test: “Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause.” McDonough, 464 U.S. at 554, 104 S.Ct. 845.
The McDonough standard applies in cases where a juror deliberately conceals *740 information as well as in cases of “mistaken but honest” responses to voir dire questions. Id. at 555, 104 S.Ct. 845. Only when a juror is found to have deliberately concealed material information, however, may bias be inferred. If information is not concealed deliberately, “the movant must show actual bias.” See, e.g., Zerka v. Green, 49 F.3d 1181, 1186 (6th Cir.1995) (emphasis omitted). “Actual bias is ‘bias in fact’ and focuses on the record at voir dire.” Johnson v. Luoma, 425 F.3d 318, 326 (6th Cir.2005).
C.
In determining whether to issue a writ of habeas corpus, the provisions of the Antiterrorism and Effective Death Penalty Act (“AEDPA”) apply and serve to significantly constrain the federal courts’ review of a state court’s decision. 28 U.S.C. § 2254 (2006). Under § 2254(d), a federal court may not grant relief from a state court conviction unless the state-court adjudication “(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.”
A state court’s legal decision is “contrary to” clearly established federal law under § 2254(d)(1) “if the state court arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.” Williams v. Taylor, 529 U.S. 362, 412-18, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An “unreasonable application” occurs when the state court correctly identifies the correct legal principle from Supreme Court precedent “but unreasonably applies that principle to the facts” of the case before it. Id. at 413, 120 S.Ct. 1495.
Before a reviewing court reaches the question of the reasonableness and conformity to relevant precedent of the state court adjudication, however, it must first confront a more primal question: whether the defendant’s claim was actually adjudicated by the state courts. AEDPA’s deferential standard of review applies only to claims that were actually adjudicated on the merits in state court proceedings. Robinson v. Howes, 663 F.3d 819, 822-23 (6th Cir.2011). “Claims that were not adjudicated on the merits in State court proceedings receive the pre-AEDPA standard of review: de novo for questions of law ... and clear error for questions of fact.” Id. at 823 (internal quotation marks omitted).
This question of adjudication is of particularly fundamental importance to the case before us, as a close examination of its peculiar procedural history reveals. Following a hearing in which English claimed that his federal and state constitutional rights to an impartial jury were violated, the state trial court granted English’s motion for a new trial. The trial court expressly found that Juror A had deliberately concealed material information during voir dire, but the court did not make an explicit finding that Juror A had been biased.[3] Due to the material concealment, *741 a finding of bias could have been readily inferred under McDonough. See Zerka, 49 F.3d at 1186. But neither the trial court nor English was particularly concerned with bias, since, under the prevailing state law as both understood it, such a showing was not a necessary element of English’s claim. Both embraced as dispositive People v. Manser, 250 Mich.App. 21, 645 N.W.2d 65, 69 (2002) (per curiam), which observed that “the seating of a juror who withholds information that should have been produced as a result of questioning during the voir dire presents too great a risk that a defendant will not be provided an impartial jury.”
Consequently, the post-conviction hearing on English’s motion for a new trial touched upon, but did not fully decide, the juror bias question central to the 6th Amendment claim. Instead, the court based its decision on its general observation that a prospective juror in a criminal case who has been the victim of a crime similar to the one for which the defendant is on trial is routinely challenged and excused for cause. And the court concluded that the juror’s failure to disclose was sufficient to find that English’s right to a fair and impartial jury had been violated — a conclusion that arguably implies but does not state that the juror was biased.
The court of appeals understandably found the trial court’s observations insufficient grounds upon which to grant a new trial. The court of appeals took particular exception to what it perceived to be the erroneous standard that the trial court applied to reach that conclusion. The court stated that “the only basis for [the trial court’s] finding was that all victims of sexual abuse would have been excused for cause, even if the trial court had to do so sua sponte.” English, 2007 WL 4245412 at *3. The court viewed the trial judge’s statement as encapsulating a “belief that a victim of sexual abuse should automatically be excused from sitting on a criminal sexual conduct jury.” Id. at *1. The court found “no basis in law” for such a rule of “automatic exclusion.” Id. at *3.
The court stressed that, under Michigan law, “when information potentially affecting a juror’s ability to act impartially is discovered after the jury is sworn, the defendant is entitled to relief only if he can establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause.” Id. at *2 (citing People v. Daoust, 228 Mich.App. 1, 577 N.W.2d 179, 184 (1998), as the controlling authority).[4] Applying this two-prong test, the court of appeals first concluded that “defendant makes no showing that he was prejudiced by the presence of the challenged juror nor did the trial court make any such finding of prejudice.” Id. at *3. Turning then to the exclusive focus of the trial court, the appeals court found that “[b]ecause the trial court did not identify *742 any proper basis for excluding the juror for cause, it erred in granting defendant’s motion for new trial.” Id. On this ground, it set aside the trial court’s order and reinstated the conviction and sentence. Id.
Thus, the 2-1 opinion elucidated the proper state law standard at the time and highlighted the trial court’s error in applying the wrong standard. In reversing the trial court’s erroneous application of state law without remand to the trial court, however, the court of appeals left unresolved whether Juror A was biased or otherwise excusable for cause, as required under both McDonough and the second prong of Daoust
The appeals court’s decision unambiguously reversed the trial court’s grant of a new trial, but whether its decision should be considered an adjudication of English’s Sixth Amendment claim for AEDPA purposes is a question without an easy answer. Two recent Supreme Court decisions offer guidance in dealing with the perplexing question presented here: under what circumstances a state court decision should be deemed an adjudication of the federal law claims raised in a'habeas petition.
In Harrington v. Richter, the defendant had petitioned the California Supreme Court for a writ of habeas corpus, claiming, among other things, ineffective assistance of counsel. 562 U.S. -, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011). The state court had denied the petition in a one-sentence ruling. The Ninth Circuit Court of Appeals, sitting en banc, cited its own precedent for the proposition that where the state court has not explained its reasoning the reviewing court must conduct an independent review of the record to determine whether the state court’s decision was objectively reasonable. Richter v. Hickman, 578 F.3d 944, 951 (9th Cir. 2009). The court concluded that the state court decision was not a reasonable application of Supreme Court precedent and reversed the district court’s denial of the writ of habeas corpus on that ground. Id. at 953.
The Supreme Court reversed, holding that the Ninth Circuit had improperly conducted a de novo review, rather than first addressing the threshold issue under § 2254(d)(1): whether fairminded jurists could disagree that the arguments or theories which supported or could have supported the court’s decision are inconsistent with the holding in a prior decision of the Supreme Court. Richter, 131 S.Ct. at 786. As to the subsidiary question of adjudication, the Court declared that the defendant’s claims should be regarded as adjudicated, the brevity of the state court’s order notwithstanding: “[Sec.] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been ‘adjudicated on the merits.’ ” Id. at 785. “When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. ” Id. at 784-85 (emphasis added).
Even more recently, in Johnson v. Williams, a state appeals court was faced with a claim that the trial court’s dismissal of a juror had violated defendant’s rights under both the Sixth Amendment and the California Penal Code. — U.S.-, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013). The defendant’s brief did not clearly distinguish between these two lines of authority. Id. at 1093. The appeals court held that the juror had been properly dismissed for bias, citing a mix of state law and Supreme Court precedent in support. Id. The decision did not expressly state whether it was *743 deciding the state law claim, the federal law claim, or both. Id.
Reviewing the denial of the defendant’s habeas petition, the Ninth Circuit declined to afford ÁEDPA deference to the California Court of Appeal’s decision, finding that “when a court devotes many pages to explaining its reason for denying one claim, and then says absolutely nothing that even acknowledges the existence of a second claim, there is reason to think that it is more likely that the court simply neglected the issue and failed to adjudicate the claim.” Williams v. Cavazos, 646 F.3d 626, 639 (9th Cir.2011) (internal quotation marks omitted). The court concluded that it was “obvious, not theoretical or speculative, that Williams’s constitutional claim was not adjudicated at all, and so the Richter presumption is overcome.” Id. (internal quotation marks omitted).
The Supreme Court reversed, holding that the reasoning in Richter applies to a state court opinion that addresses some but not all of a defendant’s claims, as well as a state court order that does not expressly address any of defendant’s claims: “When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits — but that presumption can in some limited circumstances be rebutted. ” Williams, 133 S.Ct. at 1096 (emphasis added). The Court held that a number of factors in the case before it supported the presumption that the federal claims had been adjudicated: the close similarity between the state law and Sixth Amendment claims; the state appeals court’s reliance on Supreme Court precedent, as well as state case law which discussed Supreme Court precedent; and the fact that the defendant treated her state and federal claims as interchangeable. Id. at 1098-99. The presumption must be rebuttable, the Court cautioned, because “an irrebuttable presumption that state courts never overlook federal claims would occasionally miss the mark.” Id. at 1097.
The circumstances of the present case contrast with these Supreme Court precedents. Unlike the state court’s decision in Richter, the Michigan Court of Appeals’ decision did provide a richly developed analysis. But, rather than a decision on the merits of English’s state law and Sixth Amendment claims, the decision was a judgment on the trial court’s misunderstanding of the law. In contrast to Williams, the Michigan court did not make a determination as to whether English was denied his right to a fair and impartial jury, either under the applicable standard set forth in McDonough or under state law. By simply negating the trial court’s ruling, without making its own finding as to whether Juror A was biased or otherwise excusable for cause, and without remanding for further proceedings under the proper legal standard, the court of appeals appears to have left English’s Sixth Amendment and state law claims unresolved as to their merits.
The dissenting opinions from both the Michigan Court of Appeals and the Michigan Supreme Court support such a conclusion. The dissenting judge on the appeals court panel, Judge White, agreed with the majority that the trial court had applied an improper standard and that “a victim of sexual assault is not automatically excusable for cause.” English, 2007 WL 4245412 at *5. But, she pointed out, “it does not follow that the juror was not, in fact, excusable for cause,” and she dissented on grounds that the case should be remanded to the trial court for final adjudication, rather than simply reinstating the verdict. Id. She aptly described what an adjudication of English’s juror bias claim should rightly entail:
*744 A trial court is not obliged to accept a juror’s declaration that the juror is not biased if there is reason to doubt the assertion. Rather, a trial court must make its own determination, taking into account all the circumstances, including the juror’s statements and demeanor, whether the juror can be fair and impartial. Here, the trial court should make a determination on remand, considering the circumstances of the voir dire, the later disclosure, the credibility of the juror’s explanation and declaration of impartiality, and any other relevant factors.

Id.

Similarly, the dissent by two Justices of the Michigan Supreme Court points to the issue left undecided: “[We] would remand this case to the trial court for reconsideration under the appropriate standard, as explained in the partially dissenting opinion in the Court of Appeals, of whether the juror was excusable for cause.” English, 743 N.W.2d at 910.
Although English’s counsel misapprehended Mansers application to the case, the evidence presented in support of his claim was substantial and entirely pertinent to the determination' of implied bias under McDonough: the juror’s history of sexual abuse, her withholding of this history, and her testimony as to why this information was withheld. Thus, while counsel’s legal argument may have been markedly different had he possessed a firmer understanding of the law underlying his Sixth Amendment claim, it is not clear that the evidence presented would have been, or should have been, substantially different. Consequently, we cannot embrace our dissenting colleague’s conclusion that English did not meet his eviden-tiary burden of showing bias and is therefore not entitled to habeas relief. We conclude instead that whether English has met this burden of proof has yet to be decided: it was not decided by the trial court because its grant of a new trial, based upon a legal standard contrary to both state law and Supreme Court precedent, was reversed, and it was not decided by the appeals court because it reversed without remand for further fact-finding by the trial court.
D.
In the district court’s view, the central issue raised by English’s habeas petition was whether the decision of the court of appeals constituted a reasonable application of established Supreme Court precedent. Finding that the state law applied by the court of appeals was consistent in its central inquiry with the federal standard, the district court deferred to the state court’s judgment and summarily dismissed the petition. Missing from the district court’s analysis is a determination of whether English’s claims had been adjudicated by the state court. Without such a determination, the deference to the state court by the district court was inappropriate.
The district court rendered its decision in 2009, before the Supreme Court had decided Richter and Williams. Sixth Circuit case law at that time was fairly consistent in holding that a finding of adjudication required an explicit assessment by the state court of the federal claim at issue. See, e.g., Danner v. Motley, 448 F.3d 372, 376 (2006) (finding no adjudication where the Kentucky Supreme Court examined only state law in its analysis); Lyell v. Renico, 470 F.3d 1177, 1182 (2006) (conducting de novo review because state court did not assess the merits of a claim properly raised in a habeas petition); Newton v. Million, 349 F.3d 873, 878 (6th Cir.2003) (same); but c.f. Dennis v. Mitchell, 354 F.3d 511, 521 (6th Cir.2003) (holding that *745 the state court’s decision was a reasonable application of McDonough although the Ohio Supreme Court made no mention of McDonough in its decision); Baker v. Craven, 82 Fed.Appx. 423, 428 (6th Cir.2003) (applying AEDPA deference even though the state court had analyzed the federal claims only under state law). Under this precedent, the district court’s deference to the state court under AEDPA would almost certainly have been ruled by this court to be reversible error.
In Richter and Williams, the Supreme Court altered the legal terrain by establishing a rebuttable presumption that the defendant’s claims were adjudicated on the merits by the state court. In the case before us, the plain language of the state court’s opinion itself appears to rebut the presumption. Unlike in Richter, the state appellate court’s opinion was carefully reasoned and left no uncertainty as to the basis for its holding. Unlike in Williams, the peculiarly-worded holding addressed neither the merits of the defendant’s state claim nor his federal claim, and allowed no further proceedings to resolve those claims. Whether these distinguishing features of the state court’s treatment of English’s appeal are sufficient to rebut the presumption of adjudication is a subtle question of law which must be decided as a matter preliminary to any other inquiry.
III.
Since AEDPA’s deferential standard of review applies only to claims that were adjudicated on the merits in state court proceedings, we conclude that the district court’s deference to the Michigan courts was an improper basis for denying English’s habeas petition without the requisite determination that his federal claim had been adjudicated on the merits. We further conclude that, given the complex procedural, evidentiary, and constitutional questions raised by the petition, it was an inappropriate candidate for summary dismissal under Rule 4, without full briefing by the parties and without the benefit of the entire state court record.
We must, therefore, return the matter to the district court for a determination of the adjudication question, applying the Richter/Williams rebuttable presumption. The court’s further proceedings should be based upon full briefing by the parties and a review of the complete state court record. On this basis, if the court determines that the presumption of adjudication is rebutted, it must conduct de novo consideration of the merits of English’s Sixth Amendment claim regarding the misconduct of Juror A. If the court should determine that the presumption is not rebutted and AEDPA deference is warranted, the court must still evaluate English’s Sixth Amendment claim through the AEDPA lens, applying the McDonough test to determine whether English was denied his Sixth Amendment right to be tried by a fair and impartial jury, as that right is elucidated by Supreme Court precedent.
Based upon the foregoing, we VACATE and REMAND the petition to the district court for further proceedings consistent with this opinion.

. The district court's summary of facts was drawn from the defendant's brief, without benefit of the entire state court trial record, particularly the jury voir dire transcript.

. Rule 4. Preliminary Review; Serving the Petition and Order: The clerk must promptly forward the petition to a judge under the court’s assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other re *739 sponse within a fixed time, or to take other action the judge may order. In every case, the clerk must serve a copy of the petition and any order on the respondent and on the attorney general or other appropriate officer of the state involved.

. The dissent takes inconsistent positions on this point. Initially, the dissent strongly asserts that the trial court made a factual finding that Juror A had been fair and impartial and urges us to give this finding a presumption of correctness. The record shows, however, that the trial court merely recounted Juror A's statements that she believed that her experience of sexual abuse would not interfere with her ability to be a fair juror. The *741 court did not make an express finding that Juror A was, in fact, impartial or unbiased. The dissent takes a different tack in section C, pointing out that English had an opportunity at the state evidentiary hearing to develop a factual predicate for actual bias but “chose not to have the state trial court make the requisite factual finding.” The dissent cannot have it both ways, and we think the most reasonable reading of the record is that the state trial court did not make a factual finding of actual bias.

. Both Daoust and Manser, the case relied upon by English in his motion for a new trial, have since been overruled by People v. Miller, 482 Mich. 540, 759 N.W.2d 850, 863 (2008) (holding that a new trial is not always required whenever a juror would have been excusable for cause, since the proper inquiry is whether the defendant was denied his right to an impartial jury).