**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0374n.06

**No. 14-2016**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOHN HENRY RAY, | ) | **FILED** |
| | ) | Jul 05, 2016 |
| Petitioner-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DUNCAN MACLAREN, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

**BEFORE: MOORE and COOK, Circuit Judges; PEARSON, District Judge.**[*]

**PEARSON, District Judge.** Petitioner John Henry Ray is serving a life sentence without the possibility of parole for convictions of murder, killing an unborn child, assault, armed robbery, home invasion, and being a felon in possession. Prior to trial, Ray had reason to believe that one of the complaining witnesses had an ongoing relationship with the police department that investigated his case. When Ray sought production of evidence to substantiate his belief, the prosecutor requested that the trial judge review the evidence *ex parte* and *in camera*. Neither Ray nor his counsel were present during the review of the evidence. Following the *ex parte* review, the trial judge ruled that there was no relevant relationship between Ray's case, the complaining witness, and the police department. Consequently, Ray was denied access to the evidence reviewed and the transcript of the *in camera* review.

Appealing from the district court's denial of his petition for a writ of habeas corpus, Ray raises two grounds for granting his petition. He argues that he was deprived of counsel during a

---

[*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

No. 14-2016, *John Henry Ray v. Duncan MacLaren, Warden*

critical stage when his counsel was not permitted to attend the *in camera* hearing. He also argues

that his appellate counsel was ineffective for failing to raise that critical stage issue on direct

appeal. For the reasons set forth below, we VACATE in part the district court's denial of habeas

relief and REMAND the case for further proceedings.

### Factual and Procedural Background

In 2004, Ray was tried alongside two co-defendants, Jarius Perkins and Juanita Elam, for

multiple felonies arising out of a robbery of a known drug dealer. The following facts are

adduced from Ray's state court proceedings, and presumed correct here. 28 U.S.C. § 2254(e)(1).

On direct review, the Michigan Court of Appeals set forth the following facts:

> Defendant Perkins, aged twenty-one, his girlfriend, defendant Elam, aged twenty-eight, and defendant Ray, aged thirty-eight, were involved in the killing of a man, Deshone Douglas Moore, aged twenty-eight, and a pregnant woman, Amanda Zarbaugh, aged twenty, and her unborn child, during the course of an armed robbery at Zarbaugh's residence in Romulus, Michigan in July 2004. Defendant Elam was already in the house with the two victims when defendants Perkins and Ray arrived with guns. Defendant Perkins and Ray encountered Christopher Straughter and Ebonie Booker exiting the house when they arrived. Defendant Perkins ran into the house just prior to fatal shots being heard, and defendant Ray stayed outside and held the witnesses at gunpoint.

*People v. Perkins*, No. 259865, 2006 WL 1330320, at *1 (Mich. Ct. App. May 16, 2006) (per

curiam).[1] The following additional facts were included in the state trial court's opinion denying

Ray relief from judgment:

> This case arises from the planned armed robbery of Christopher Straughter
> by Juanita Elam, her boyfriend Jarius Perkins and friend John Ray. Straughter was
> a robbery target because the defendants believed he was a dope dealer who

---

[1] The Rule 5 Materials submitted to the district court did not include the even-numbered pages of this opinion. The district court relied on the opinion available on Westlaw.

carried large sums of cash.

Defendant Ray (twenty one years old) and two co-defendants Elam (twenty eight) and Perkins (thirty eight)[2] went to Amanda Zarbaugh's house to rob Straughter. Zarbaugh was pregnant with an unborn child and was in the house with Deshone D. Moore.

Elam knew both Straughter and Zarbaugh. Elam went to Zarbaugh's alone. Elam enticed Straughter via phone to come to Zarbaugh's house under the guise that she wanted to buy drugs and to talk business with him. Elam became insistent that Straughter come to Zarbaugh's house. She said she would remain there until Straughter arrived.

Elam then called Perkins' cell phone. The inference from that call is that Elam alerted Perkins and Ray to come to the house.

Straughter came to the house and entered with Ebonie Booker. They spoke with Elam. Elam also spoke with Moore, who was in the house with Zarbaugh. Straughter and Booker headed out the front door. They encountered Perkins and Ray, who were waiting outside the house with guns. Perkins and Ray rushed Straughter and Booker with drawn handguns. Perkins and Ray robbed Straughter and Booker at gunpoint and forced them to the ground.

Ray stood over Straughter and Booker at gunpoint outside the house while Perkins went into the house. Elam, Zarbaugh and Moore were still inside the house. Shots were fired. Perkins and Elam came out of the house.

Zarbaugh and Moore were discovered executed, as was Zarbaugh's unborn child. Cash was also taken.

Straughter and Booker were threatened as they lay on the ground. They overheard discussions about killing them. They got up and ran. Straughter and Booker were shot at, but the guns did not discharge because they were either empty or jammed. Straughter and Booker continued to run from the scene. All three perpetrators, Elam, Ray and Perkins, fled the scene in Perkins' silver Explorer.

---

[2] The trial court incorrectly stated Ray's age (thirty-eight) as Perkins's age (twenty-one) and vice versa. The Michigan Court of Appeals accurately states Ray as thirty-eight years old.

The State's case against Ray relied on the testimony of Straughter to identify Ray as one of the participants in the robbery. Ray's counsel sought to discredit Straughter through evidence of an ongoing relationship between Straughter and the Romulus Police Department. Counsel thought that Straughter and the Police Department had a history because of a note, written by one of the Department's detectives, that stated that "Straughter continues to call [the detective] for money." When asked about this evidence, the prosecutor requested to discuss the issue *in camera* with the judge. Ray's counsel did not attend the *in camera* proceeding. Following the proceeding, the judge ruled on the record that there was "no relevant relation between this case and Mr. Christopher Straughter and the Romulus Police Department."

Before the start of trial, Ray's counsel sought to strike Straughter's testimony if his client was not permitted to review the transcript of the *in camera* proceeding. Unsuccessful in this attempt, Ray's counsel argued throughout trial that Ray's guilt could not be established through the testimony of Straughter because of Straughter's lack of credibility and because Straughter was lying to cover for his association with the robbed drug house.

The jury found Ray guilty under an aiding and abetting theory of two counts of first-degree felony murder, two counts of second-degree murder, one count of killing an unborn child, two counts of assault with intent to do great bodily harm less than murder, two counts of armed robbery, one count of first-degree home invasion, and one count of being a felon in possession of a firearm and possession of a firearm while committing a felony. For these crimes, Ray was sentenced to life in prison without parole.

Ray appealed his conviction. Through different counsel, Ray raised four substantive claims on direct appeal: the adequacy of jury selection, prosecutorial misconduct, the

4

insufficiency of the evidence, and a Double Jeopardy challenge due to Ray's conviction of both felony murder and the underlying felony of home invasion. Ray prevailed on the Double Jeopardy challenge. The Michigan Court of Appeals remanded the case to correct the home invasion judgment, but otherwise affirmed Ray's conviction. *Perkins*, 2006 WL 1330320, at *18–19. Ray did not object to the *ex parte* proceeding either through counsel, or through a separately-filed *pro per* brief.[3]

Ray filed a *pro per* application for leave to appeal to the Michigan Supreme Court, and presented eleven questions for review—none of which are at issue in this appeal. The Michigan Supreme Court denied leave to appeal, believing that the questions presented did not warrant review.

Ray then initiated state collateral proceedings by filing a *pro per* motion for relief from judgment with the Wayne County Circuit Court. Later, Ray was appointed counsel for purposes of his collateral proceedings. Ray filed a motion for relief from judgment through his attorney, and filed a supplemental brief in *pro per*. In his *pro per* brief, Ray raised for the first time his argument that he was denied counsel at a critical stage of trial when the *in camera* proceeding was conducted outside the presence of his counsel. The trial court characterized the issue in the following way:

> The court erred in failure [sic] to provide Straughter's relation with Romulus Police as an informant as revealed in an in-camera proceeding (raised in defendant's pro per supplemental motion, Oct. 16, 2008).

---

[3] In Michigan, an indigent criminal defendant "who insists that a particular claim or claims be raised on appeal against the advice of counsel" has the right, under Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004) to file a brief presenting the claims within 84 days of the appellant's brief filed by his attorney.

The trial court rejected Ray's critical stage argument:

> The defendant alleges error because evidence of Straughter's relationship with the Romulus Police as an informant was not introduced into evidence. MCR 6.508(D) provides that this court may not grant relief on a ground raised and decided against the defendant on a prior appeal. This ground was raised by the defendant on a prior appeal. See Opinion, Court of Appeals, *People v. Ray*, III, Defendant Ray, paragraph B, page 14. Moreover, Straughter's relationship with the police, informant or not, has not been shown by defendant to be relevant to any issue at trial. Irrelevant evidence is not admissible for any purpose. MRE 401. Because this ground was raised on appeal, relief on this ground is denied.

To Ray's claim for ineffective assistance of appellate counsel, the trial court answered:

> The defendant also has the right to effective assistance of counsel on appeal. See *Evitts v Lucey*, 468 US 387 (1985). Defendant asserts he was deprived of effective assistance of appellate counsel. The issue that defendant was deprived of counsel on appeal is unsupported by any fact of record.
>
> The test of ineffective assistance of appellate counsel is whether counsel's performance was so deficient that he could not have been functioning by counsel [sic] required by the Sixth Amendment. That is, whether the conduct of counsel on appeal so undermined the functioning of the process that it did not produce a just result. The presumption on appeal is that counsel was effective. See *US v Cronic*, 466 US 648 ([1]984); *Strickland v Washington*, 466 US 668 (1984).
>
> On appeal, counsel may make strategic decisions as to which issues are to be raised on appeal. Counsel does not have a[] duty to raise every non-frivolous issue demanded by defendant on appeal. *Jones v Barnes*, 463 US 745 (1983); *People v Pickens*, 446 Mich 298; 520 NW2d 797 (1994).
>
> Counsel was not ineffective for not raising the issues presented in this motion on appeal. Defendant has not demonstrated he is entitled to relief. MCR 6.508(D). Relief on this ground is denied.

Both the Michigan Court of Appeals and Michigan Supreme Court rejected Ray's applications for leave to appeal, without further elaboration, because he had failed to establish entitlement to relief under Mich. Ct. R. 6.508(D).

Ray filed a *pro se* petition for a writ of habeas corpus on March 16, 2011. One of the eighteen grounds for relief asserted by the petition was Ray's belief that he was deprived of the right to counsel at a critical stage when the trial court conducted the *in camera* proceeding outside the presence of his counsel. Ray also asserted ineffective assistance of appellate counsel for failing to raise the critical-stage error on direct appeal.

The district court denied the petition in its entirety.[4] Relevant to the instant appeal, the district court rejected both Ray's critical-stage and related ineffective-assistance-of-appellate-counsel arguments. As to the critical-stage claim the district court said:

> In his seventeenth claim, the petitioner alleges that he was deprived of counsel at a "critical stage of the proceedings due to an *ex parte* communication between the trial court and prosecutor during an *in-camera* review to determine whether to admit evidence of prior instances of cooperation between Christopher Straughter and the Romulus Police Department. After conducting this *in-camera* review, the trial judge indicated on the record that there was no relevant relation between this case and Mr. Straughter and the Romulus Police.
>
> The complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). However, the Supreme Court never has held that an improper *ex parte* conference between a judge and a prosecutor during trial amounts to a *Cronic* error. *See Hereford v. Warren*, 536 F. 3d 523, 529 (6th Cir. 2008). The Sixth Circuit has "refused to label ex parte communications critical stages in all cases." *Id.* at 530 n.4 (citing *United States v. Carmichael*, 232 F.3d 510, 517 (6th Cir. 2000) (holding that *ex parte* discussions between a prosecutor and a judge concerning the contents of Title III wiretap transcripts is not a critical stage)). In *United States v. Minsky*, 963 F.2d 870 (6th Cir.1992), the court implied that an *ex parte* discussion between a judge and prosecutor as part of an *in camera*

---

[4] After noting that the State had asserted both statute of limitations and procedural default as bars to review, the district court proceeded to resolve the petition on the merits in the interests of judicial economy. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (noting that a district court need not resolve procedural issues "before deciding against the petitioner on the merits"). On appeal, the State has not objected to the district court's approach, and has confined its arguments to the merits of Ray's habeas petition.

review of FBI investigation forms is a critical stage. Although the court held that an *ex parte* conference can only be justified if there are "compelling state interests," *Minsky*, 963 F.2d at 874, "the language found in *Minsky* is not a Supreme Court holding that reflects clearly established federal law." *Heresford*, 536 F. 3d at 532. "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). Therefore, habeas relief cannot be grounded on *Minsky*'s rationale.

As to the ineffective-assistance-of-appellate-counsel claim, the district court stated:

> In his fifteenth and sixteenth claims, the petitioner contends that his appellate counsel was ineffective by failing to raise some of his claims on his direct appeal. Not so. The petitioner was not entitled to compel his appointed attorney to raise all nonfrivolous claims on appeal if counsel, as a matter of professional judgment, elected not to raise the claims. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

> The Court has found no merit in the claims advanced here by the petitioner. Therefore, there is no reasonable probability that, but for appellate counsel's failure to raise those claims, the petitioner would have prevailed on appeal. Appellate counsel was not constitutionally ineffective. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (explaining that "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit'" (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001))); *see also Fuller v. Lafler*, 826 F. Supp. 2d 1040, 1065 (E.D. Mich. 2011) (concluding that, because there was no reasonable probability that the petitioner would have prevailed on appeal were it not for appellate counsel's failure to raise the claims, "the petitioner's right to competent counsel on appeal was not violated, and the state court's adjudication of the petitioner's claim was not contrary to or an unreasonable application of *Strickland*").

The district court certified Ray's critical-stage issue for appeal, noting that "reasonable jurists could debate whether the claim that the petitioner was deprived of counsel at a critical stage due to *ex parte* communications between the trial court and prosecutor should have been resolved in a different manner." On March 13, 2015, this Court expanded the issues on appeal to

include Ray's ineffective-assistance-of-appellate-counsel claim grounded in his contention that counsel should have raised the critical-stage error on direct appeal.

**Standard of Review**

A habeas petitioner may not obtain relief in federal court on claims adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This standard . . . is difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)) (internal quotation marks omitted).

A state court decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). For purposes of AEDPA, "clearly established Federal law" means only the holdings from Supreme Court cases, not its dicta, *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012), nor precedent from the federal courts of appeals, s*ee Marshall v. Rodgers*, 133 S. Ct. 1446, 1450−51 (2013) (noting that circuit precedent may not be used to refine a general principle from a Supreme Court decision into a more specific legal rule not yet announced by the Supreme Court).

A decision is an unreasonable application of clearly established federal law when the state court "correctly identified the correct legal principle from Supreme Court precedent but unreasonably applied that principle to the facts of the case before it." *Dennis v. Mitchell*,

9

No. 14-2016, *John Henry Ray v. Duncan MacLaren, Warden*

354 F.3d 511, 517 (6th Cir. 2003) (citing *Williams*, 529 U.S. at 412−13). Relief will not be granted unless the petitioner can "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Analysis**

**A. Ray's *Cronic* Claim**

The right to counsel under the Sixth Amendment secures for a criminal defendant the right to a fair trial. *United States v. Wade*, 388 U.S. 218, 226 (1967). The right to counsel guarantees that the accused will have representation at all critical stages of the criminal process. *Iowa v. Tovar*, 541 U.S. 77, 87 (2004). When counsel is either totally absent from, or prevented from assisting the accused during, a critical stage of trial, the Supreme Court presumes that the accused has suffered constitutional error without requiring a corresponding showing of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984) (concluding that a trial is unfair if the accused is deprived of counsel during a critical stage of trial).

The Supreme Court has offered various general characterizations of what constitutes a critical stage. In *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961), the Supreme Court defined "critical stage" as a phase of trial in which "[a]vailable defenses may be . . . irretrievably lost, if not then and there asserted." In *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam), the Supreme Court, without explicitly adopting it, repeated an appellate court's description of "a critical stage in a criminal proceeding" as one "where rights are preserved or lost." And, in *Bell v. Cone*, 535 U.S. 685, 696 (1984), the Supreme Court defined "critical stage" as "a step of a

criminal proceeding . . . that [holds] significant consequences for the accused." Nonetheless, the

precise contours of *Cronic* remain unclear. *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015).

Ray advances two theories upon which this Court could grant habeas relief. Initially, Ray

argued that the state court decision unreasonably applied *Cronic* to the facts of his case. In his

reply brief, however, Ray raised for the first time both that the state court decision was contrary

to clearly established federal law and that the state court neglected to adjudicate the merits of his

*Cronic* claim at all.[5] Ray's last argument is his most persuasive.

Because the deference owed to a state court decision can be dispositive of the claim, a

federal court reviewing a habeas petition must first address this "threshold question of the proper

standard of review"—specifically, whether AEDPA deference or *de novo* review applies.

*Robinson v. Howes*, 663 F.3d 819, 822 (6th Cir. 2011). In order for AEDPA's deferential

standard of review to apply, a petitioner's claims must have been "adjudicated on the merits in

State court proceedings." 28 U.S.C. § 2254(d); *see also English v. Berghuis*, 529 F. App'x 734,

740 (6th Cir. 2013) ("Before a reviewing court reaches the question of the reasonableness and

conformity to relevant precedent of the state court adjudication, however, it must first confront a

---

[5] During oral arguments, the State objected to Ray raising this argument in reply and urged this Court to consider it waived. "As a general rule, this Court does not entertain issues raised for the first time in an appellant's reply brief." *United States v. Demjanjuk*, 367 F.3d 623, 637 (6th Cir. 2004). There are exceptions to this rule. "[A] party cannot 'waive' the proper standard of review by failing to argue it." *Brown v. Smith*, 551 F.3d 424, 428 n.2 (6th Cir. 2008), *abrogated on other grounds as recognized by Williams v. Lafler*, 494 F. App'x 526, 529 (6th Cir. 2012); *see also Moritz v. Lafler*, 525 F. App'x 277, 285 n.5 (6th Cir. 2013) ("[N]othing suggests that *Brown*'s ruling on waiver of the AEDPA standard of review is any less persuasive."). Ray's belatedly raised argument, in part, discourages the Court from applying the deferential standard of review under AEDPA and, as such, is not waived. As will be explained below, however, the State will have the opportunity to respond to this argument in the first instance before the district court.

more primal question: whether the defendant's claim was actually adjudicated by the state courts."). "Claims that were not 'adjudicated on the merits in State court proceedings' receive the pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Robinson*, 663 F.3d at 823 (citing *Brown v. Smith*, 551 F.3d 424, 428, 430 (6th Cir. 2008)). It is presumed that the state court adjudicated on the merits all claims presented to it, absent indicia to the contrary. *Harrington*, 562 U.S. at 99. That presumption may be overcome, however, "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99−100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

In this case, the record indicates that Ray may be able to rebut the presumption that his *Cronic* claim was adjudicated on the merits in state court. Ray raised his critical stage claim in his state habeas petition and a supplemental motion. Specifically, Ray argued in his Supplemental Motion for Relief that his "defense was irretrievably lost by the trial court's failure to allow defense counsel's presence at the in-camera review, as well as the denial of the request for review of the record, as was requested by trial counsel . . . At that period, moment, and event in the course of his criminal proceeding was a 'CRITICAL STAGE.'" The Wayne County Circuit Court characterized this claim as follows: "The court erred in failure to provide Straughter's relation with Romulus Police as an informant as revealed in an in-camera proceeding (raised in defendant's pro per supplemental motion, Oct. 16, 2008) . . . ." It then denied Ray's claim without any discussion of *Cronic*, the Sixth Amendment, or critical stage

jurisprudence.[6] Instead, the state court rejected Ray's argument based on its conclusion that, as a matter of state evidentiary law, Straughter's relationship with the police was irrelevant. Relevance, however, is not the proper inquiry for a constitutional claim under *Cronic*; as mentioned above, the *Cronic* analysis turns on whether an individual was denied counsel during a critical stage of trial. *Cronic*, 466 U.S. at 659. The state court's analysis of Ray's *Cronic* claim, therefore, strongly suggests that the claim "was inadvertently overlooked in state court." *Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013).

There is another strong reason to conclude that the Wayne County Circuit Court failed to adjudicate Ray's *Cronic* claim on the merits. In rejecting Ray's *Cronic* claim, the Wayne County Circuit Court wrote: "This ground was raised by the defendant on a prior appeal. See Opinion, Court of Appeals, *People v. Ray*, III, Defendant Ray, paragraph B, page 14." That statement and the citation supporting it are both erroneous. Ray did not raise a *Cronic* claim in his direct appeal to the Michigan Court of Appeals. He did, however, raise a related *Brady* claim: in his Pro Per Supplemental Brief, Ray argued that the prosecution improperly withheld exculpatory impeachment evidence when it failed to disclose information about Straughter's relationship with the Romulus Police Department—information, Ray wrote, that the trial court had reviewed *in camera*.

---

[6] Although a state court decision need not expressly mention clearly established federal law to receive AEDPA deference, *see Early v. Packer*, 537 U.S. 3, 8 (2002), nothing else about the decision reveals that the court adjudicated the *Cronic* claim on its merits. The absence of any discussion of *Cronic*, therefore, is not a reason for concluding that the state court's adjudication of the *Cronic* claim was contrary to clearly established federal law, but rather reason to doubt that the *Cronic* claim was adjudicated on the merits at all.

The Michigan Court of Appeals—in paragraph B, on page *13 of its 2006 opinion—rejected this *Brady* claim. *Perkins*, 2006 WL 1330320, at *13. It thus appears that the Wayne County Circuit Court confused Ray's *Brady* claim (which he raised in his appeal as of right) with his *Cronic* claim (which he raised on state collateral review). That explains why the Wayne County Circuit Court did not cite *Cronic* or its progeny in its opinion. Put simply, the Wayne County Circuit Court's treatment of Ray's *Cronic* claim "leads very clearly to the conclusion that" that court "inadvertently overlooked" this claim. *Williams*, 133 S. Ct. at 1097.

Despite the strong reason to believe that Ray can rebut the presumption that the state court adjudicated the merits of his *Cronic* claim, the district court analyzed Ray's *Cronic* claim with AEDPA deference without making the preliminary determination that the deferential standard *should* be applied. This omission was understandable. Ray was *pro se* before the district court, and the notion that the state court decision failed to adjudicate Ray's *Cronic* claim on the merits was first raised by appointed counsel in Ray's reply brief on appeal. Nonetheless, the district court's decision omitted a crucial, preliminary analytical step, one that carries serious implications for the merits of Ray's petition. *See Olson v. Little*, 604 F. App'x 387, 390 (6th Cir. 2015) (recognizing the importance of determining whether to apply "§ 2254's deferential standard of review . . . '[b]ecause the requirements of § 2254(d) are difficult to meet.'" (quoting *Johnson*, 133 S. Ct. at 1091)), *cert. denied*, 136 S. Ct. 551 (2015).

We hold that the district court committed reversible error in failing to determine whether Ray's *Cronic* claim was adjudicated on the merits before applying AEDPA deference to the state court decision. Rather than performing a *de novo* review of Ray's claim, however, we remand the case to the district court to allow it to analyze whether there was an adjudication on the

merits. An argument concerning the standard of review cannot be waived. *Brown*, 551 F.3d at 428 n.2. The fact remains, however, that the State has not been afforded the opportunity to respond to Ray's non-waivable yet belatedly raised argument. Remanding the case will afford the State that opportunity, and will permit the issue of whether an adjudication on the merits occurred to receive full consideration by the court better situated to make the determination in the first instance. *See, e.g.*, *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 433 (6th Cir. 2012) (remanding to the district court to consider in the first instance elements of the plaintiff's *prima facie* case neither party briefed on appeal); *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 261−62 (6th Cir. 2002) (remanding the case to the district court and permitting the district court to consider in the first instance an argument raised by plaintiff on appeal). This is true even in cases in which the issue to be decided on remand involves a question of law. *See, e.g.*, *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 649 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 980 (2016) (remanding to the district court for considering in the first instance whether the defendant was entitled to government-contractor immunity as a matter of law); *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 338 (6th Cir. 2005) (remanding for considering in the first instance whether a legal duty under 29 C.F.R. § 825.305(d) was triggered). Habeas corpus is no exception. *See, e.g.*, *In re Smith*, 690 F.3d 809, 810 (6th Cir. 2012) (remanding to the district court for determination in the first instance whether a habeas petition raised successive claims within the meaning of 28 U.S.C. § 2244(b)). We therefore vacate the portion of the district court's decision denying Ray relief on his *Cronic* claim, and remand the case to the district court with instructions to allow the parties to brief (1) whether there was an adjudication on the merits

as to Ray's *Cronic* claim, and (2) whether Ray is entitled to relief under the appropriate standard

of review.

### B. Ray's Ineffective Assistance of Appellate Counsel Claim

To establish ineffective assistance of counsel, Ray must satisfy two requirements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient when

the representation falls below an "objective standard of reasonableness." *Id.* at 688. Ray must

overcome the strong presumption that counsel's conduct fell "within the wide range of

reasonable professional assistance," and that "the challenged action 'might be considered sound

trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To

demonstrate prejudice, Ray "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

694.

Although the failure to raise an issue on appeal can amount to constitutionally ineffective

assistance, appellate counsel does not have an obligation to raise every possible claim that a

client may have. *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (citing *Jones v.

Barnes*, 463 U.S. 745, 751–54 (1983)). The decision of which issues to pursue is typically left to

counsel's professional judgment; "'winnowing out weaker arguments on appeal and focusing on'

those more likely to prevail, far from being evidence of incompetence, is the hallmark of

effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*,

463 U.S. at 751–52).

In determining whether appellate counsel's performance was deficient, the Sixth Circuit

has identified the following factors as useful for analysis:

> (1) Were the omitted issues "significant and obvious"? (2) Was there arguably
> contrary authority on the omitted issues? (3) Were the omitted issues clearly
> stronger than those presented? (4) Were the omitted issues objected to at trial?
> (5) Were the trial court's rulings subject to deference on appeal? (6) Did appellate
> counsel testify in a collateral proceeding as to his appeal strategy and, if so, were
> the justifications reasonable? (7) What was appellate counsel's level of experience
> and expertise? (8) Did the petitioner and appellate counsel meet and go over
> possible issues? (9) Is there evidence that counsel reviewed all the facts?
> (10) Were the omitted issues dealt with in other assignments of error? (11) Was
> the decision to omit an issue an unreasonable one which only an incompetent
> attorney would adopt?

*McFarland*, 356 F.3d at 711 (quoting *Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999)).

"Counsel's performance is strongly presumed to be effective," *see McFarland*, 356 F.3d at 710

(quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)), and "'only when ignored issues

are clearly stronger than those presented, will the presumption of effective assistance of

[appellate] counsel be overcome,'" *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003)

(alteration in original) (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)).

Ray argues that appellate counsel was deficient in two respects. He urges that appellate

counsel was deficient for missing the "significant and obvious" *Cronic* error by ignoring both

clearly established Supreme Court and Sixth Circuit law and trial counsel's objections to not

having the evidence reviewed during the *in camera* hearing. Ray also contends that the omitted

claim was significantly stronger than the others raised on direct appeal. These arguments are all logically dependent on the merits of the underlying *Cronic* claim—an issue we do not reach today. *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007) ("Whether raising the issue might have changed the result of the appeal, in turn, goes to the merits of the claim itself."). Accordingly, we also vacate the district court's denial of habeas relief on Ray's ineffective-assistance-of-appellate-counsel claim, and remand to the district court to consider the claim in light of its resolution of Ray's *Cronic* claim on remand.

**Conclusion**

For the foregoing reasons, we VACATE in part the district court's denial of habeas relief and REMAND the case for further proceedings consistent with this opinion.